ELECTA LATHAM v. MELINDA A. UDELL ET AL.

*Delivery in escrow—Undue influence.*

A deed delivered by the grantor to a third person with directions to have it handed over to the grantee immediately after his death, is valid.

Courts cannot interfere with a testator's voluntary and intelligent bequests.

There can be no fatally undue influence unless there is a person incapable of protecting himself as well as a wrong-doer to be resisted.

A wife may justly influence the making of her husband's will for her own benefit or that of others, so long as she does not act fraudulently or extort benefits from her husband when he is not in condition to exercise his faculties as a free agent.

There is no legal presumption against the validity of any provision which a husband may make in his wife's favor.

Appeal from Cass. Submitted Jan. 18. Decided Jan. 22.

BILL TO SET ASIDE DEEDS.    Defendants appeal.

*O. F. Bean* for complainant and appellee urged that where a deed remained in the control of the grantor, there was no delivery such as would vest title, *Hatch v. Haskins,* 5 Shepley, 391; *Maynard v. Maynard,* 10 Mass., 455; *Stillwell v. Hubbard,* 20 Wend., 44; *Jackson v. Phipps,* 12 Johns., 419; *Church v. Gilman,* 15 Wend., 656, and as to undue influence, cited *Whelan v. Whelan,* 3 Cow., 538; *Sears v. Shafer,* 6 N. Y., 272; *Seeley v. Price,* 14 Mich., 542; *Stiles v. Stiles,* Id., 72; *Case v. Case,* 26 Mich., 484; as to testamentary memory, *Aikin v. Weckerly,* 19 Mich., 482; *Beaubien v. Cicotte,* 12 Mich., 459.

*Arthur Brown* and *Elbert Roos* for defendants and appellants.    Undue influence to vitiate an act must amount to coercion destroying free agency, *Gardner v. Gardner,* 22 Wend., 526; Redf. Amer. Cases on the Law

of Wills, p. 318. Placing a deed in the keeping of a third person with the understanding that it is to be delivered to the grantee after the grantor's death is a valid delivery, *Stephens v. Huss*, 54 Penn. St., 20: *Wheelwright v. Wheelwright,* 2 Mass., 446; *Hatch v. Hatch*, 9 Mass., 307; *Foster v. Mansfield*, 3 Met., 412; it is not even necessary that the grantor should have parted with the custody of the deed, *Barlow v. Heneage*, Prec. Chan., 211; *Clavering v. Clavering,* Prec. Chan., 235; *Naldred v. Gilham,* 1 P. Wms., 577; *Boughton v. Boughton*, 1 Atk., 625.

CAMPBELL, C. J. Complainant filed her bill to set aside certain deeds, with a life lease and bill of sale, made by her deceased father, Nathan Udell, in December, 1875, on the grounds of non-delivery, incompetency, fraud and undue influence.

Nathan Udell died in May, 1876, from the effects of a cancer in the face, which had afflicted him for a considerable time, and which by degrees had eaten away a part of his face so as to seriously interfere with his speech, and ultimately with his sight.

On the 24th of December, 1876, he made a life lease to his wife of his real estate, with a bill of sale of most of the household effects, and also made deeds to his children, Henry, Daniel and Cordelia, three of the defendants, of 50, 80, and 30 acres respectively, the three parcels constituting his entire farm of 160 acres. The deed of 80 acres to Daniel provided for the payment to his eldest daughter, Mrs. Latham, the complainant, of $200 within two years after her mother's death. These deeds were subject to Mrs. Udell's life lease.

These papers were all duly executed and acknowledged at their date and delivered to Mrs. Udell by her husband with directions to have them handed over to the grantees immediately after his death.

It is stated to us by counsel that the case was decided in the court below on the ground that there was no effectual delivery.

The testimony shows very plainly that these deeds and other papers were given to Mrs. Udell with explicit directions as to what should be done with them. Mr. Udell beyond doubt meant and ordered that they should be delivered to the grantees at his death, and have complete effect. In *Ellis v. Secor*, 31 Mich., 185, and *Wallace v. Harris*, 32 Mich., 380, this subject was fully considered, and such deeds under the rules there recognized, and under the authorities there cited, must be held operative to carry out the grantor's intent, concerning which there is no uncertainty in the testimony. They are not void for non-delivery.

The objection of want of capacity is without any support. The disease under which Mr. Udell was suffering, though very painful, did not impair his understanding or affect his capacity to comprehend the act which he engaged in. It was done deliberately as a substitute for a former imperfect arrangement. He understood it fully, and it expressed his purposes completely. There is no foundation whatever for any claim that rests on his unfitness to dispose of his property as he chose.

Much stress is laid on the fact that one child is practically disinherited, and the mother made sole possessor of the estate for life.

If the law required property to be disposed of equally among those who would be heirs in case of intestacy, then such an objection might deserve some consideration. But where the law leaves every one to dispose of his property as he chooses, the fact that he prefers one to another can have no bearing on the validity of his voluntary and intelligent action. It concerns no one what his reasons may be for doing what he has a right to do. Courts have no right to substitute their judgment for his, or to determine upon the wisdom or justice of his reasons. Whether wise or unwise, just or unjust, they are for him and for no one else to determine. In this case he understood what he was doing, and evidently had reasons which we are bound to assume were satis-

factory. There is nothing in his course which has the least tendency to indicate any such extravagance as to suggest an absence of legal capacity or mental control. The provision for his wife was one which was perfectly natural, and commends itself to approbation. The discrimination between his children is not unprecedented and was certainly not unlawful. He might lawfully have given his wife the entire estate, or made any other disposition of it at his pleasure. But as before stated, if it was his conscious and deliberate act, as we find it was, we have no concern with its wisdom.

The claim of undue influence and fraud is one which is not very creditable to the complainant as against her parents. There is no evidence whatever that Mrs. Udell used any importunity or attempted any interference with her husband's wishes. And we do not know of any rule of law or of morals which makes it unlawful or improper for a wife to use her wifely influence for her own benefit or for that of others, unless she acts fraudulently, or extorts benefits from her husband when he is not in a condition to exercise his faculties as a free agent. A faithful wife ought to have very great influence over her husband, and it is one of the necessary results of proper marriage relations. It would be monstrous to deny to a woman who is generally an important agent in building up domestic prosperity, the right to express her wishes concerning its disposal. And there is no legal presumption against the validity of any provision which a husband may make in his wife's favor. In the present case the provision made for Mrs. Udell was not only very plainly desired and directed by her husband, but in no respect extravagant. The property of her husband had been chiefly obtained in the first place by her means, and its increased value from the improvement of the farm, beyond the natural rise from the settlement of the country, was probably as much due to her exertions as to his. He certainly was under no duty to deprive her

38 MICH.—31.

of any part of its usufruct. The evidence shows that he had some reasons for discriminating among his children. But upon this question we are only concerned in inquiring whether his free agency was overcome by the fraud or wrongful conduct of his wife. There is no appearance of any misconduct or even of any interference on her part, and the charges to that effect are utterly unfounded. If we had to investigate the reasons which led Mr. Udell to make a smaller provision for complainant, we might perhaps conceive of their nature from the character of this controversy, and the course of some who are engaged in it. But it is not important to determine them.

Mr. Udell was entirely able to control his own actions, and was not weak enough to be a mere instrument in any one's hands. There can be no fatally undue influence without a person incapable of protecting himself, as well as a wrong-doer to be resisted. Neither is found here.

This controversy seems to have arisen from an idea that is unfortunately too prevalent, that courts have a right to set aside family arrangements of a testamentary character, unless made in such a way as to satisfy their own notions of policy and justice. Such notions are dangerous and destructive of all security.

The decree below must be reversed, and the bill dismissed, with costs of both courts.

MARSTON and GRAVES, JJ., concurred. COOLEY, J., did not sit in this case.