[S. F. No. 3106.   Department Two.—July 24, 1903.]

## In the Matter of the Estate of HENRIETTA S. CALEF, Deceased.

ESTATES OF DECEASED PERSONS—CONTEST OF CODICIL TO WILL—INSANE DELUSION—ERRONEOUS INSTRUCTION.—Upon the contest of the codicil of a will, on the ground of insanity of the testatrix, an instruction that if the jury find from the evidence that the deceased believed that the contestant "was wanting in affection for her, and insincere, and cared only for her property, and was endeavoring to take advantage of her infirmities to cheat and defraud her during her lifetime, and that such belief. was without foundation in fact, and was not based on any information or evidence upon the subject communicated to her, the judgment should be against the will," is erroneous in omitting the elements necessary to the conclusion that the belief was adhered to against reason and evidence, and was a belief that a rational mind would not entertain, and that the insane delusion operated to cause the production of the codicil.

ID.—UNDUE INFLUENCE—FINDING AGAINST EVIDENCE.—Where the evidence scarcely warrants a suspicion that the will was procured by undue influence, a finding that it was so procured in fact is against the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco denying probate of a codicil to a will.   J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, John S. Drum, and W. B. Treadwell, for Appellant.

Edward C. Harrison, for Respondent.

McFARLAND, J.—Finis E. Johnson, proponent, filed a petition in which he prayed that a certain document, called the "will," dated and executed September 23, 1896, and a certain other document, dated and executed May 15, 1899, called the "codicil" of said will, be together probated as constituting the last will and testament of the deceased, Henrietta S. Calef, deceased. The probate was contested by Mabel C. Cootey.   Three issues were submitted to a jury: 1.

Whether the testatrix was of sound mind when she made the codicil; 2. Whether the codicil was the result of insane delusions; and 3. Whether the codicil was procured by the undue influence of Mrs. Mabel Tickell. The jury found against the validity of the codicil on all of the issues. After a trial, the court rendered judgment admitting the "will" to probate, but denying probate of the "codicil"; and from the latter part of said judgment, denying the probate of the codicil, proponent appeals.

It is not necessary here to determine whether or not the evidence was sufficient to warrant the jury in finding that the deceased was not of sound mind when she executed the codicil; for, in our opinion, the instructions on that subject were erroneous and prejudicial to appellant. A good many instructions were given at the request of each party; and it is contended by respondent that, even if some of them were erroneous, considered separately, yet when taken as a whole —one supplementing another—they do not incorrectly state the law. But the court, on its own motion, gave the following additional instruction: "If, therefore, you find from the evidence which has been introduced in this case that the decedent, Henrietta S. Calef, at the time of writing the codicil bearing date May 15, 1889, believed that the contestant, Mabel C. Cootey, was wanting in affection for her and insincere, and cared only for her property, or was endeavoring to take advantage of her infirmities to cheat and defraud her of her moneys during her lifetime; and you find further that such belief on her part was without foundation in fact, and was not based upon any information or evidence upon the subject communicated to her, then your verdict upon the issue of insanity should be against the will and in favor of the contestant." This was a separate, independent instruction, complete in itself. It did not merely tell the jury that they might consider the matters therein enumerated, but directed them to find for the contestant on the issue of insanity, if they found these enumerated matters to be true. It cannot, therefore, be helped out by any other instruction; it must stand or fall by itself. And, in our opinion, it was clearly erroneous. It is hazardous to undertake to tell a jury that from certain facts they should find insanity; and if that can

be done at all, the recitation of facts in this instruction is entirely too meager. The things recited would not alone even justify a jury in finding insanity or an insane delusion; and most certainly they do not justify the proposition that they "should" so find. An instruction in which a jury is told that they should find insanity or an insane delusion, if they find certain enumerated facts, is erroneous if it omits any facts necessary to that conclusion; and the facts recited in this instruction do not warrant the direction with which it closes. The cases are rare where it can be said that certain alleged facts, if true, constitute, as a matter of law, insanity or insane delusion. The instruction under review tells the jury, substantially, that, if the testatrix at the time she made the codicil had a certain belief as to the affection and sincerity of the contestant, and that the latter cared only for her property, etc., and that the jury thought that said belief was "without foundation in fact," and not based on "any information or evidence on the subject communicated to her," then the jury should find her insane. Because the testatrix had a belief as to the affection, motives, etc., of another person, which the jury thought was not founded in fact, and on evidence or information communicated to her, it does not follow, as a matter of law, that she was insane or had an insane delusion. The sanest of people have notions as to the character of the feelings, etc., of others, which many people would consider unfounded. It could hardly be said, for instance, that the author of certain well-known lines was, as a matter of law, insane because he could give no reason for the statement that he did not like a certain "Dr. Fell." If an instruction of the general character of the one here in question can be considered as dealing with a matter of law, and not a mere matter of fact, it should contain, under the authorities, other elements; as, for instance, that the belief was "adhered to against reason and evidence," that it was a belief which "a rational mind would not entertain." (See *Estate of Kendrick,* 130 Cal. 360; *Estate of Carpenter,* 94 Cal. 406; *Estate of Scott,* 128 Cal. 57.) As was said in *Estate of Kendrick,* "In order to sustain a contest for the probate of a will for the unsoundness of mind of the testator, by reason of insane delusions, it must be shown that the delusions were

not merely temporary hallucinations, or unfounded dislikes or antipathies, or false opinions and beliefs, but were spontaneous and firmly fixed beliefs of a diseased mind, which no argument or evidence could convince to the contrary, and which a rational mind would not entertain, and also that the insane delusions operated to cause the production of the will under attack."

The instruction now under consideration does not meet the rule stated in the Kendrick case, or in any other case to which our attention has been called. It applies to the first two grounds of contest, and, therefore, the verdict as to those issues cannot be sustained.

With respect to the issue of undue influence, we think that there was no evidence to support the finding that the codicil was procured by the undue influence of Mabel Tickell, and that the court erred in submitting that issue to the jury, over the objection of appellant. The most that can be reasonably claimed by respondent is, that the evidence showed some interest and opportunity on the part of the person charged with the undue influence. The evidence that the record presents would scarcely warrant a suspicion that the codicil was procured by undue influence exercised by her over the testatrix. The testatrix had no children, but at the time of her marriage her husband, who was a widower, had three children, one of whom is Mrs. Crouch, who is now a widow and the mother of Mabel Tickell. The testatrix always had great affection for Mrs. Crouch and Mrs. Tickell, and called them her daughter and granddaughter, and treated them as such. She had made only a small contingent provision in her original will for Mrs. Tickell, and had left the contestant, Cootey, ten thousand dollars. The commencement of her last illness was about December 1, 1898, and before that time, when there was no question as to her mental soundness, she had several conversations with her lawyer and confidential business agent, Mr. Johnson, about the estate of Mabel Tickell's deceased grandfather, Judge Crouch, and was told that Mabel would have very little from that estate. She then told Johnson that she would change her will so as to provide for Mrs. Tickell. But although this matter was mentioned by her two or three times, nothing definite was then done. The beginning of her

last sickness, an attack of paralysis, was in December, 1898. She went from San Francisco, where she resided, to Los Angeles, on May 6, 1899, to the residence of Mrs. Crouch, and died in May, 1900. A short time before going to Los Angeles she told Johnson that she wanted to change her will by taking five thousand dollars from the bequest to Cootey and giving it to Mabel Tickell, and instructed him to prepare a codicil to that effect and send it to Los Angeles. After she arrived in Los Angeles she frequently complained that Johnson had not sent a draft of the codicil. It finally came, and on May 15th she copied from the draft-writing the codicil in her own handwriting. Her eyesight was bad, and at her request Mabel Tickell read the draft to her, and showed her where to commence the lines on the paper on which she was writing. There were other persons in the house at the time who heard the reading and knew what was being done, and there was evidence that one of them went into the room several times where the testatrix was writing. The only other circumstances of any significance are, that during a part of the two weeks immediately before the testatrix left San Francisco for Los Angeles, Mrs. Tickell was at her house in San Francisco, and that on the day on which the codicil was written the testatrix procured the contestant to take a ride to the park, so that she would not be present at the making of the codicil. It is to be observed also that the contestant herself lived with the testatrix for several years immediately before the making of the codicil. On the day the codicil was made, and immediately after its execution, the testatrix said to one of the ladies present: ''Thank God, I can now die happy, because I have done what is right to my dear Mabel.'' Apart from the circumstances above mentioned, there is no evidence tending to show any influence exerted by Mrs. Tickell over the testatrix—no evidence that the former ever attempted to influence her as to the will or codicil. The only other testimony on the point is that of Mrs. Tickell herself, who swore positively that she never attempted to influence the testatrix in any manner as to the testamentary disposition of her property; and the foregoing circumstances and evidence are entirely insufficient to sustain the finding of undue influence under the principles repeatedly declared in the decis-

ions of this court. (See *Estate of Nelson,* 132 Cal. 182, and the cases there cited, and *Estate of Kendrick,* 130 Cal. 360.) It is not necessary to examine in detail the instructions given on the subject of undue influence, or to determine whether any of them, if erroneous, are sufficiently prejudicial to call for a reversal. They probably will not be given again in the same form. It is sufficient to say that most of them deal with matters of fact and not with matters of law, and were therefore improper. It may be said further, that the facts of this case, as shown by the evidence, do not present a case calling for any instruction upon the subject of a will being "unnatural."

The part of the judgment appealed from,—that is, that part "which refused to admit to probate the codicil to said will bearing date the fifteenth day of May, 1899,"—is reversed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.