CANEDY *v.* TURNER.

1. CANCELLATION OF INSTRUMENTS—DEEDS—EVIDENCE—UNDUE INFLUENCE—COMPETENCY.

On a bill for the cancellation of a deed made by plaintiff to his niece and her husband under an agreement whereby plaintiff was to receive care and support in defendants' home for life, and the deed was to be delivered to defendants by a third person, in whose possession it was, upon plaintiff's death, and plaintiff's wife died before execution of the deed, and he had no children, was of advanced age at the time of the execution of the deed, and the execution of the deed was in accordance with the desires of his wife, evidence *held*, insufficient to show undue influence and incompetency to make the deed.

2. SAME—EQUITY.

On a bill to set aside a deed on the ground of incompetency of plaintiff, where it appeared that the premises deeded comprised all the property of plaintiff, and was deeded under an arrangement whereby he was to live with defendants, his niece and her husband, and be supported during the remainder of his life, and the deed, which was in the hands of a third person, was to be delivered to defendants upon plaintiff's death, and the evidence failed to show incompetency of plaintiff, but defendants expressed in open court a willingness to submit to a decree for the payment of a fixed annual sum to plaintiff for life, in case he did not care to live with them, and the land conveyed was worth from $6,000 to $7,000 and rented for $250 per year, a decree that the defendants pay $300 per year to plaintiff for life, pay all taxes and keep the premises in repair, and that the fulfillment of the terms of the decree should be a lien on the property, in case the plaintiff did not desire to live with defendants and elected to abide by the decree, was proper.

Appeal from Eaton; North, J., presiding. Submitted April 11, 1917. (Docket No. 151.) Decided May 31, 1917.

Bill by Alexander M. Canedy against Kenney C. Turner and another to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Decree entered for defendants.

*Gardner & Hood,* for plaintiff.

*C. A. Shepard* and *W. D. Grommon,* for defendants.

MOORE, J. This bill of complaint was filed August 29, 1916, to set aside a warranty deed made January 15, 1915, by the plaintiff to the defendants. The case was heard in open court. From a decree dismissing the bill of complaint the case is brought to this court by appeal.

It is claimed plaintiff was incompetent and unduly influenced when he made the deed. The trial judge expressed himself as thoroughly satisfied that the preponderance of the testimony as to each of these questions is decidedly against the plaintiff's claim.

Some question is made about the effect of the pleadings, but the turning and decisive point in the case is one of fact, namely, Was the deed executed and delivered when plaintiff was competent to do so? It is somewhat significant that plaintiff himself filed the bill of complaint and was also a witness in his own behalf. Upon the trial no one questioned his competency to do each of these things. When the deed was drawn plaintiff was past 77 years of age. His wife died shortly before that. They had no children. The defendant Della Turner is the plaintiff's niece, being a daughter of a sister of his deceased wife. His testimony on cross-examination discloses that before her death his wife desired in case of her death that the husband should have the defendants move upon the farm and take care of plaintiff, and that plaintiff and his wife had talked two years or more before her death that defendants should have the farm.

Shortly after the death of his wife the plaintiff alone visited the president of the Michigan State Bank at Eaton Rapids, whom he had known for 50 years, and had the warranty deed, which is the subject of controversy here, executed and put in a private box plaintiff had in the bank. A little later the defendants left a little farm they had in Hillsdale county, and moved into the house occupied by the plaintiff and commenced caring for him. This was done at the request of plaintiff, and upon his assurance that he had deeded the property to them. Later defendants learned where the deed was and talked over with the plaintiff whether what was done was a sufficient delivery of the deed. Following this talk all of the parties visited the banker, who had drawn the deed. It was taken from the private box and an indorsement was made on the envelope containing the deed as follows:

"Deed of Alexander M. Canedy to Kenney C. Turner and Della Turner, this paper not to be delivered to either party until all are present and only to Mr. and Mrs. Turner, after the decease of Mr. Canedy.
                          "A. M. CANEDY.
                          "K. C. TURNER.
                          "MRS. DELLA TURNER."

And the banker testified:

"That as soon as that memorandum was drawn and the deed was put in the envelope that I took it and put it in the package where we keep papers of that kind, wills," etc.

In 1916, after plaintiff had made a visit to a brother, he became dissatisfied and this proceeding was begun.

Without going into the details of the testimony, it may be said that no one can read this record without reaching the conclusion that the deed was made without such undue influence as should affect its validity, and when the plaintiff was entirely competent to make

it.  See *Latham* v. *Udell*, 38 Mich. 238; *Spencer* v. *Terry's Estate*, 127 Mich. 420 (86 N. W. 998); *Hayman* v. *Wakeham*, 133 Mich. 363 (94 N. W. 1062); *Terry* v. *Terry*, 170 Mich. 330 (136 N. W. 448); *Reagan* v. *Murray*, 176 Mich. 231 (142 N. W. 545), and *Demerse* v. *Mitchell*, 187 Mich. 683 (154 N. W. 22).

The trial judge expressed himself at the conclusion of the trial in part as follows:

"From the foregoing it follows that, if ·this case was to be disposed of on its merits, the court would have no alternative but to grant to the defendants a decree dismissing the plaintiff's bill of complaint with costs to be taxed by the defendant.  Defendants offer in open court to submit to a decree whereby a fixed amount might be ordered paid annually by them to the plaintiff, so long as the plaintiff sees fit to make his home elsewhere than with the defendants.  Unfortunate cases of this character seem to have been worked out along this line, for example, see *Wilson* v. *Wilson*, 160 Mich. 555 (125 N. W. 385).  The facts in this case in a large measure are strikingly similar to the facts as reported in the above cause.  The plaintiff, however, is a man of practically no other property than that involved in this suit.  He seems to be an exceptionally well-preserved man for one of his years, and while the proofs show his expectancy to be one of less than five years, still it would not be at all surprising if he lived longer.  The property which he conveyed to these defendants consists of a farm of about 79 acres.  The proof as to valuation varies from $75 to $100 an acre; and its rental value is shown by the proof to be at least $250 per year.  Under these conditions it would be no more than fair to this plaintiff, in case he elects not to return to the home of the defendants, to grant him a decree which shall provide that the defendants shall pay him the sum of $300 per year; the same to be payable at equal quarterly installments, to be computed from the time that the plaintiff ceased living with the defendants.  In case the plaintiff elects to take a decree of this character, it shall be done without costs to either party, and the fulfillment of the terms of the decree may be made a lien upon the land involved.

It should also be provided that the defendants are to pay the taxes and to keep the premises in repair."

The plaintiff did not elect to take such a decree, but such proceedings were had as we have already stated.

In response to an inquiry directed to counsel during the argument in this court, of this case, it was stated that defendants recognize their duty to care for the plaintiff, and that their house is open to him. They indicated a willingness to have the court make some provision for him in case he thinks he cannot come back to them.

We are satisfied with the suggestions made by the trial court in the words we have quoted, and a decree may be made in this court accordingly. The defendants will recover their costs in this court.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.