[Civ. No. 13793.   Second Dist., Div. One.   Apr. 12, 1943.]

Estate of JOSEPH TRIBBEY, Deceased. ESTHER TRIBBEY THAGARD, Appellant, v. LILLIAN MAY TRIBBEY, as Administratrix with the Will Annexed, etc., Respondent.

Hiram T. Kellogg for Appellant.

Geo. W. Perkins for Respondent.

DORAN, J.—This appeal is taken from an order granting a motion to set aside the verdict of the jury and for a new trial in the contest of a will. The motion in question was granted upon the ground of insufficiency of the evidence to justify the verdict. Following are the facts as stated by appellant.

Joseph Tribbey died on or about the 15th day of September, 1940, at Los Angeles, California. He left surviving him as heirs at law a widow, Lillian May Tribbey, respondent herein, and an adult daughter, Esther Tribbey Thagard, the contestant. At the time of his death he was 60 years of age, or thereabouts. On the 23rd of September, his widow petitioned for probate of a purported holographic will of the decedent. Said will was dated September 9, 1940, which was six days before the death of the testator. By this will the testator left his daughter, the contestant, the sum of $1.00. Testator then stated in the will that, "I leave all of my earthly belongings, including everything I own, both personal and property I own, to my wife, Lillian May Tribbey." On the 21st day of October, 1940, the will was admitted to probate and letters of administration with the will annexed were issued to the widow, Lillian May Tribbey, who qualified the 21st day of October, 1940. Thereafter and within six months a petition for revocation of probate of the will was filed, on April 18, 1941, by the contestant, Esther Tribbey Thagard.

The first trial of the action resulted in disagreement of the jury, which was thereupon discharged, and the case was again set for trial. The second trial commenced March 18, 1942, was concluded March 23, 1942, and a verdict was returned by the jury on that date wherein the jury made its finding that the will in question was procured by the undue influence of the proponent, Lillian May Tribbey, widow of

deceased. Thereafter and within the time allowed by law proponent moved for a new trial and the court made its order herein appealed from, granting proponent's motion.

According to the evidence, as stated by appellant, the testator, Joseph Tribbey, was at the Hollywood Race Track in the middle of July, 1940, which was less than two months before his death, with John R. Land. He met Kermit Crownover there and Mr. Crownover rode home, in the back seat of Mr. Tribbey's automobile, driven by Mr. Land. Mr. Tribbey told Mr. Land that Mrs. Tribbey, the proponent and respondent herein, had been after him to make his will, and that he "wasn't feeling good and didn't expect to live long." He said he didn't want to do that (presumably, make a will). Mr. Tribbey further stated on that occasion that his wife wanted him to make a will leaving everything to her and he didn't want to cut his daughter off. Mr. Tribbey told Mr. Land in the presence of Mr. Crownover that his wife had been trying for quite some time to get him to make a will and cut his daughter off, and he didn't want to do it.

On the 24th day of August, 1940, about three weeks before Joseph Tribbey died, he went with John R. Land to the Del Mar Race Track to see the handicap race in which Big Flash was the winner. This was less than two weeks before he made out the purported holographic will. On the way home from the race track Mr. Tribbey told Mr. Land about his physical condition and stated that the doctor wanted him to keep away from race tracks. At that time Mr. Tribbey also told Mr. Land: "I know I cannot last long and I am certainly going to enjoy the things I like as long as I am here." He also told Mr. Land upon that occasion that his wife was trying to get him to cut off his daughter in a will and that he did not want to do it. In the car with Mr. Land and Mr. Tribbey on the return trip from Del Mar was George Land, son of John Land. George Land heard Mr. Tribbey tell his father that he, Tribbey, was not feeling good and that his wife had been asking him to make his will out and that he didn't want to do it.

On the 9th day of September, Mrs. Tribbey stated that Mr. Tribbey had handed her an envelope and said, "If anything happens you may need this." She did not look at the will at that time. She said he had never had any conversation with her about making a will and that she had never asked him to make a will and that she had never opened the envelope until after his death, when she took it to an attorney.

Lillian May Tribbey married Joseph Tribbey on November 12, 1936. They had no children. At the time of her marriage to him he owned a house and had other property, some of which is the property involved in this estate, but no effort was made at the trial to prove the character of all the property with reference to its being separate and community property. After testator's death, Lillian May Tribbey called Mr. Land, who went over to her house shortly after the funeral, and at that time Mrs. Tribbey said to Mr. Land: "Dick, I finally persuaded Joe to make a will and cut Esther off with $1.00 and I feel now that I have her property, I can put an addition on my bedroom." She also said at the same time that she "feared the daughter might contest the will," and she further said to Mr. Land, "I can depend upon you and Beulah being on my side if she does." Mr. Land further testified on cross-examination that Mrs. Tribbey told him at that time that she had finally persuaded Joseph Tribbey to make a will in her favor and cut out Esther Tribbey.

Esther Tribbey Thagard, contestant and appellant, lived with her father for one year after she grew up. She was married while living in his house. Esther Thagard was the daughter of the deceased. Her mother was Anna Raggio, who stated that Esther Tribbey was born June 6, 1907, and that Esther's mother and the decedent separated in 1917, being divorced in 1925. She also stated that the testator was a good father while the child was growing up and prior to the separation. According to appellant, there was considerable evidence to show that the father and daughter continued to be friendly.

Appellant also states that the evidence discloses that Joseph Tribbey was a sick man for several years prior to his death and had been wholly unable to work for more than a year prior to his death because of a bad heart ailment. He had been confined to his bed around Christmas, 1939, and had been in bed for some time prior thereto. He had a "bad spell" with his heart on the night of August 2, 1940, just about 38 days prior to the date of the will here in question. At that time it was necessary to get a pulmotor to revive him. The testator had been getting weaker for some time prior to his death.

In proof that the will was actuated solely by the volition of the decedent, his widow introduced the testimony of a number of friends that the decedent had said his daughter never seemed like a daughter to him, and that the testator com-

plained that his daughter never came to see him unless she wanted money. On the other hand, the contestant showed that only on one occasion had she received any money from her father. That was in San Diego and the amount was trifling. Contestant produced evidence that she was on friendly terms with her father until he died. Proponent, Lillian Tribbey, stated she was a widow and owned her own home when she married testator. The evidence showed that Esther Tribbey Thagard was estranged from her husband, and was forced to work when her father died, and that for four or five months preceding she had been living in San Francisco where her mother lived. There was no evidence of any quarrel between father and daughter; and the daughter had called to see her father at the Christmas season of 1940, when he was sick in bed.

Appellant contends that the foregoing constitutes sufficient evidence to support the verdict of the jury that the will was procured by the undue influence of the testator's widow. In support of this contention appellant argues that the purported will was unnatural; that the dispositions of the will are at variance with the decedent's testamentary intentions; that the relations between the alleged wrongdoer and the decedent afforded to the former an opportunity to control the testamentary act; that the decedent's condition was such as to permit of a subversion of his freedom of will; and that the alleged wrongdoer was active in procuring the instrument to be executed.

Whether or not the will was unnatural in its provisions is of no great importance in the absence of sufficient evidence that the will was not the spontaneous act of a competent testator. It has been said that one has a right to make an unjust will, an unreasonable will, or even a cruel will. (*In re McDevitt,* 95 Cal. 17, 33 [30 P. 101].)

Appellant has stated the evidence in the light most favorable to her case, and it is apparent from appellant's own statement of the evidence that there was practically no evidence that the mind of the testator was subjected to the will of his wife. The wife's statements that she had ''induced'' the testator to make a will cutting off his daughter are alone insufficient to prove undue influence. '' 'There is no legal presumption against the validity of any provision which a husband may make in a wife's favor, for she may justly influence the making of her husband's will for her own benefit or that of others so long as she does not act fraud-

ulently, or extort benefits from her husband when he is not in condition to exercise his faculties as a free agent. (*Latham* v. *Udell*, 38 Mich. 238.) Accordingly, the circumstances that the testator's wife urged upon him the propriety of leaving his property to her does not constitute undue influence to vitiate the will. (*Hughes* v. *Murtha*, 32 N.J.Eq. 288.) And the mere fact that the will of the husband is changed to gratify the wishes of the wife does not raise a presumption of undue influence on her part. (*Rankin* v. *Rankin*, 61 Mo. 295.)' '' (*In re Langford*, 108 Cal. 608, 622 [41 P. 701], quoting from notes to *Richmond's Appeal*, 21 Am.St.Rep. 98.) ''The mere fact that one person has been influenced by the arguments or entreaties of another is not enough to make the influence an undue one.'' (*Estate of Anderson*, 185 Cal. 700, 707 [198 P. 407].) ''Evidence must be produced that pressure was brought to bear directly upon the testamentary act; . . . It must, however, do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator.'' (*Estate of McDevitt, supra,* at pages 33 and 34.)

█ It does not appear from the evidence that the wife participated in the making of the will and, furthermore, there was nothing to show that the testator's mental or physical condition was one which would be likely to render his mind subject to the will of others. From all that appears in the evidence, the testator had a mind of his own. It is shown that he suffered from heart trouble, but it is not shown that his heart trouble had any effect upon his mental condition. On the contrary, the statement of the evidence above given indicates, if anything, that the testator was possessed of a normal state of mind, capable of contemplating the objects of his bounty; and that he was a free agent. The evidence was clearly insufficient to support the verdict of the jury.

The order granting the motion for a new trial is affirmed.

York, P. J., and White, J., concurred.