[Civ. No. 13415. First Dist., Div. Two. Dec. 20, 1947.]

Estate of FREDERICK J. SPAULDING, Deceased. BRYAN
J. SPAULDING, Appellant, v. LODIE L. SEATON,
Respondent.

Charles A. Christin and Everett H. Roan for Appellant.

Gaylord & Gaylord and Walter H. Duane for Respondent.

DOOLING, J.—Bryan Jennings Spaulding, adopted son and sole heir-at-law of Frederick J. Spaulding, deceased, filed a contest before probate of the last will of the decedent, alleging that testator was not of sound mind at the time of the execution of said will, that the will was procured by the undue influence of proponent, to whom decedent bequeathed practically his entire estate, and that said will was not properly attested and executed.

At the end of contestant's case, the contest with respect to the attestation and execution of the will was withdrawn and a motion for nonsuit was granted as to the undue influence count but denied as to the insanity count. The jury found decedent of sound mind and the will was admitted to probate. Contestant appeals from the judgment admitting the will to probate, from the order granting the nonsuit as to the undue influence count and from an order denying his motion for a new trial. His argument on appeal is solely concerned with the nonsuit as to the undue influence count. With respect to this count, the contest was based on allegations of control of the young proponent over the aged decedent mostly because of an unnatural sexual relation existing between them, use of that influence by proponent to suggest the proposed will and pressure to execute it by threatening to discontinue the unnatural relation.

At the trial contestant did not adduce any direct proof of the alleged suggestion and pressure. He contends, however, that there was circumstantial evidence entitled to go to the jury, consisting of a number of factors indicative of subversion of decedent's volition, which in combination would justify an inference of undue influence, although each factor standing alone would be insufficient. For this contention he relies mostly on *Estate of Graves*, 202 Cal. 258, 262 [259 P. 935], followed by this court in *Estate of Reiss*, 50 Cal.App.2d 398, 405 [123 P.2d 68]. In the Graves case, it is said:

"Three well-established facts, among others, which are recognized as being indicative of undue influence, or a subversion of a decedent's volition, stand out clearly in the record: The . . . opportunity to control the testamentary act; the decedent's condition was such as to permit of a subversion of her freedom of will; the appellant was active in procuring the instrument to be executed. In addition, appellant unduly profited as beneficiary under the will. While none of these circumstances, standing alone, has the effect

of creating a presumption against the validity of the instrument, their probative force, in combination, is to impose upon the proponent the obligation of presenting evidence of volition, and to make the question as to undue influence one of fact for the jury's determination. (26 Cal.Jur., pp. 647, 648.) Appellant correctly contends that mere proof of opportunity to influence the mind of the testatrix, even though shown to be coupled with interest, or a motive to do so, does not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on her testamentary act. (*Estate of Morcel,* 162 Cal. 188, 194 [121 P. 733].) But in this case it clearly appears that the appellant took an active part in securing the execution of the will at a time when there existed a confidential relation between himself and Mrs. Graves. The rule is well settled that ' "where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator, and has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud" (*Estate of Baird,* 176 Cal. 381, 384 [168 P. 561]; *Estate of Nutt,* 181 Cal. 522, 528 [185 P. 393]), and that "a presumption of undue influence arises from proof of the existence of a confidential relation between the testator and such a beneficiary, coupled with activity on the part of the latter in the preparation of the will." (*Estate of Higgins,* 156 Cal. 261 [104 P. 6].)' (*Estate of Relph,* 192 Cal. 451, 465 [221 P. 361].)"

We do not think that the facts proved, and the inferences that can be legitimately drawn from them, bring this case under the principle applied in *Estate of Graves, supra,* and in many other such cases. See, for example, *Estate of Teel,* 25 Cal.2d 520, 528 [154 P.2d 384], and cases there cited.

Frederick Spaulding died on January 18, 1944. The will offered for probate was dated February 27, 1940, at which time decedent was 63 years of age. He had adopted contestant, a nephew of his, in the year 1917, when contestant was nearly 21 years of age. In the year 1918, decedent made a will, of which contestant was the principal beneficiary. Until the year 1926, decedent and contestant lived and worked together, building houses and gas stations and operating cabins and auto courts. However, decedent became repeatedly involved in trouble with the authorities because of a tendency to sex perversion. In the year 1926, he was sentenced to

imprisonment at San Quentin. In 1931, he was paroled in the custody of contestant, but stayed with contestant for a few months only. In March, 1935, he made a will, leaving nearly his whole estate to a young man with whom he was then acquainted. About the month of November, 1935, decedent tried to commit suicide when he faced a new sex perversion charge when still on parole. The will, made in 1935, was revoked in January, 1936. Beginning in the year 1936, decedent served a term of approximately two years at Folsom penitentiary. When he was released from there, he stayed only a few days with contestant. Since then, until testator's death, the relations of decedent and contestant remained good, but they did not visit each other frequently. After having traveled for some time, decedent, in the latter part of the year 1939, bought a hotel in Fresno, which he ran himself. In the early part of the year 1940, the witness James T. Collingsworth saw proponent and decedent a few times together at the hotel. When asked who the proponent was decedent said: "It is just a punk we picked up. He has a room back here." The further evidence of the witness Collingsworth and his wife is such that a jury would certainly have been entitled to conclude from it that about the time of the execution of the will decedent entertained illicit relations with proponent. There is no evidence as to relations between them prior to December, 1939, or later than March, 1940.

With respect to the making of the will, proponent, called as a witness by contestant, testified that in February, 1940, probably two weeks before the 27th, the date of the will, decedent asked him by letter to come to him; decedent then suggested that proponent would come to work for him and also that a will be made in his favor. Proponent did not want to take a steady job at the hotel, but decedent nevertheless wanted to make the will. An hour or two later, proponent went with decedent to decedent's attorney, Mr. Hays, whom he had never met before, solely to be introduced to him. After the introduction, he left decedent and Mr. Hays and sat on a bench in a corner, far from where they were talking. The distance was as large as two rooms; he could not hear what was spoken. Mr. Hays testified that when the will was signed, only decedent, Mr. Hays himself, and his secretary were present. Decedent was his regular client. Decedent gave him the facts required for drawing of the will and came back after the will had been drawn. Some time elapsed in be-

tween, but the witness did not remember whether it was on the same day or whether there were one or two days in between. Prior to the execution of the will, proponent came to the office with decedent and was introduced to the witness; he does not remember any conversation except the introduction. It was the only time he met proponent. He does not know whether proponent was present when decedent discussed the will. Witness had made an extraordinarily large reception room by cutting off the hall; at one end, near the desk of the secretary, was a bench. He does not recall where the conversation between himself and decedent took place. He believes that proponent was there during the time the will was being discussed, but he has a distinct recollection that he did not participate in any way in the conversation. Proponent did not return to the office when the will was executed. The deposition of Mr. Hays' secretary is in accord with the testimony of Mr. Hays.

There did not exist between decedent and proponent a relation recognized as being confidential in character, nor is there any proof of confidence or reliance actually reposed by decedent in proponent. ■ The illicit character of the relation does not cause a presumption nor does it in itself justify an inference of undue influence. ''The question is as to the effect of the influence upon the testator's mind, not as to its moral character or its source, although in some cases the character of the person exerting the influence may be an important factor in determining its effect.'' *In re Ruffino*, 116 Cal. 304, 316 [48 P. 127]. Compare annotation 66 American Law Reports 243.

■ Had the evidence been permitted to go to the jury, they could have inferred from it that an illicit relation gave proponent an opportunity to influence the testator's perversely inclined mind and also that the will unduly favored proponent over contestant, the more natural object of testator's bounty. But these two circumstances are insufficient to permit the setting aside of a will on the ground of undue influence. In *Estate of McGivern*, 74 Cal.App.2d 150, 156 [168 P.2d 232], this court stated: ''It is the settled rule that: 'Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act. (*Estate of Langford*, 108 Cal. 608, [41

P. 701] ; *Estate of Carithers,* 156 Cal. 422, [105 P. 127].)'
*Estate of Kilborn,* 162 Cal. 4, 11 [120 P. 762].

"In *Estate of Morcel,* 162 Cal. 188, 195 [121 P. 733], the
Supreme Court, in speaking of the quantum of proof neces-
sary, said: 'And it must also be borne in mind that a mere
suspicion that undue influence *may* have been used is not suf-
ficient to warrant the setting aside of a will on that ground.
*(Estate of Keegan,* 139 Cal. 127 [72 P. 828].) The evidence
against the will must "do more than raise a suspicion. It must
amount to proof and such evidence has the force of proof only
when circumstances are proven which are inconsistent with
the claim that the will was the spontaneous act of the alleged
testator." (*In re McDevitt,* 95 Cal. 33 [30 P. 106].) "In
order to set aside a will for undue influence, there must be
substantial proof of a pressure which overpowered the volition
of the testator at the time the will was made." (*In re Lang-
ford,* 108 Cal. 623 [41 P. 705].)' "

With respect to the unnatural character of a will, it is said
in *Estate of Tribbey,* 58 Cal.App.2d 100, 104 [135 P.2d 603] :

"Whether or not the will was unnatural in its provisions
is of no great importance in the absence of sufficient evidence
that the will was not the spontaneous act of a competent tes-
tator. It has been said that one has a right to make an unjust
will, an unreasonable will, or even a cruel will. (*In re Mc-
Devitt,* 95 Cal. 17, 33 [30 P. 101].) "

What is completely lacking in the evidence here is proof of
any actual pressure exerted on decedent, either operating
directly on the testamentary act or in any other way. Appel-
lant argues that the fact that proponent accompanied the tes-
tator to the attorney when testator gave instructions for the
will is, in combination with the elements of opportunity and
undue benefit, sufficient to permit an inference of a pressure
overpowering testator's volition at the time of the making of
the will. Not all connection, however slight, of the person
accused of undue pressure with the making of the will is suf-
ficient to permit the conclusion that what otherwise would
only have been possibility or suspicion has become a fact. In
*Estate of Anderson,* 185 Cal. 700, 717-718 [198 P. 407] the
Supreme Court said:

"It is also claimed, however, that there was present in the
case at bar the element of activity on the part of the aunt
in the procurement of the will. The only evidence of such
activity is that she obtained a letter of introduction to the law-

yer who prepared the draft of the will and went with the testatrix to his office and there remained in an outer room during the interview between the testatrix and the lawyer. But this is not the activity in the procurement of the will which is necessary in order to give rise to a presumption of undue influence. The activity must be in the use of the relation for the overcoming of the will of the testator. As was said in *Estate of Ricks* [160 Cal. 450 (117 P. 532)] (to quote again), 'there must be some proof, in addition to the relation, of facts or circumstances showing the use of that relation at the time the will was made overcoming the free will and desire of the testator, in order to invalidate the testament.'

"It is also worthy of note in this connection that in *Estate of Morcel*, 162 Cal. 188 [121 P. 733], heretofore referred to, where the husband was accused of procuring the will of his wife by undue influence, the same activity as that shown here appeared, that is, the husband went with the wife to the lawyer's office when the will was drawn and executed (in fact he remained in the room during the whole time), the same contention as to a presumption arising was made as is made here, and the contention is directly overruled. Other cases of well-nigh identical facts where the same contention was made are *Estate of Latour*, 140 Cal. 414, 423, [73 P. 1070, 74 P. 441], *Estate of Calef*, 139 Cal. 673, [73 P. 539], and *Estate of Purcell*, 164 Cal. 300, [128 P. 932].

"Our conclusion then is that the evidence is insufficient to sustain the verdict of undue influence."

See, also, *Estate of Easton*, 140 Cal.App. 367 [35 P.2d 614].

 In this case the testator went to his attorney, of whom he was a regular client; there is nothing to indicate that he went there at the instigation of proponent; proponent, after having been introduced to the attorney, did not participate in any way in the discussion of the instructions; he did not accompany the testator when the testator returned to execute the will; the attorney and his secretary who acted as attesting witnesses did not consider testator under undue influence. In the circumstances of the visit to the attorney's office, there is nothing to indicate that testator did not act entirely in accord with his own desire.

Besides, the practical disinheritance of contestant was obviously not a new thought of decedent, as in 1935 he made a will to the same effect (compare *Estate of Flatau*, 10 Cal.2d 701, 704 [76 P.2d 506]) and decedent allowed the present

22

will to stand until his death, four years after the execution, although there is no evidence as to the duration of his relation with proponent. (Compare *Estate of Morcel,* 162 Cal. 188, 199 [121 P. 733] ; *Estate of Lances,* 216 Cal. 397, 404 [14 P.2d 768] ; *Estate of Morey,* 147 Cal. 495, 505 [82 P. 57] ; but see *Estate of Hettermann,* 48 Cal.App.2d 263, 273 [119 P.2d 788].)

We conclude that here there was no substantial evidence, contradicted or uncontradicted, which would have entitled the jury to find undue influence. Only by entering upon the field of conjecture could a jury have decided that in making this will decedent was moved not by his own unnatural inclination but by undue pressure of proponent.

The judgment and the order granting a motion for a non-suit as to the undue influence count are affirmed. The appeal from the order denying a new trial is dismissed, the order not being appealable.

Nourse, P. J., concurred.

A petition for a rehearing was denied January 19, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 16, 1948. Carter, J., voted for a hearing.