[L. A. No. 1721.   Department One.—August 7, 1905.]

In the Matter of the Estate of DAVID MOREY, Deceased. WILLIAM MOREY et al., Appellants, v. K. C. WELLS, and CHARLES E. TRUESDELL, Executors, et al., Respondents.

WILLS—CONTEST—JURY TRIAL—NONSUIT—DISCHARGE OF JURY.—Upon the contest of a will by petition for revocation of probate thereof, where the contestants demanded a jury trial, and the evidence adduced by them was not sufficient to justify a verdict in their favor, it was proper for the court in effect to grant a nonsuit by refusing to submit special issues to the jury, and ordering the jury discharged.

ID.—DUTY OF COURT—DISCRETION AS TO NONSUIT.—Where, upon all the evidence, it would be the duty of the trial court to set aside a verdict, and to order a new trial, it has discretion to grant a motion for a nonsuit at the close of the evidence, and to refuse to submit the case to the jury.

ID.—PROPERTY WILLED TO TESTATOR—WISHES UNEXECUTED—CONTEST-
ANTS NOT INJURED.—Where the property disposed of by will of
the decedent was willed to him by his wife, his failure to execute
her wishes, expressed in writing in relation thereto, as respects
certain bequests, is not ground of contest, where the contestants
are not interested and would not be benefited if the expressed
wishes had been carried out.

ID.—RIGHTS OF TESTATOR—PROTECTION OF BENEFICIARIES—JUDICIOUS-
NESS OF WILL IMMATERIAL.—The right to dispose of one's own
property by will is most solemnly assured by law, and is a valuable
incident to ownership, and does not depend upon its judicious use.
The beneficiaries of a will are as much entitled to protection as
any other property-owners, and courts abdicate their functions
when they permit the prejudices of a jury to set aside a will
merely upon suspicion, or because it does not conform to their
ideas of what was just or proper.

ID.—UNSOUND MIND NOT PROVED.—Evidence that the deceased was
aged and a great sufferer from physical ailment does not prove
unsoundness of mind, especially where the witnesses to his con-
dition prove negotiations with him, based on his capability of
managing his property, which was also indicated by a voluntary
departure from his wife's wishes for special reasons.

ID.—UNDUE INFLUENCE—CONFLICTING EVIDENCE—PRESUMPTION OVER-
COME.—It is not essential that there should be no conflict in the
evidence in order to justify the court in directing a verdict or
withdrawing the case from the jury; and although there was a
presumption of undue influence from the drawing of a will by a
beneficiary who had long been the attorney for the testator, who
was then old, feeble, and suffering from disease, yet where such
presumption was overcome by positive evidence without conflict
showing that no undue influence was exercised, and that the will
accorded with the testator's pronounced wishes, there is no sub-
stantial conflict in the evidence arising from such presumption, and
the court was justified in withdrawing the case from the jury.

ID.—APPEAL — IRREGULAR FINDINGS — ERROR NOT PREJUDICIAL.—After
the court had properly granted a nonsuit by withdrawing the case
from the jury and discharging it, it was error thereafter to make
special findings for the defendant, yet such irregularity was not
prejudicial, and cannot justify a reversal where it is manifest,
after two ineffectual trials, that appellants have exhausted their
evidence and that another trial would be useless.

APPEAL from an order of the Superior Court of San
Bernardino County denying a new trial. N. H. Conklin,
Judge presiding.

The facts are stated in the opinion of the court.

Ely & Campbell, and Henry W. Nisbet, for Appellants.

The law raises a presumption of undue influence of the beneficiaries who participated in the drafting of the will, which question should have been left to the jury. (Civ. Code, sec. 2235; *Estate of Kohler*, 79 Cal. 313, 21 Pac. 758; *Ross* v. *Conway*, 92 Cal. 632, 28 Pac. 785; *St. Leger's Appeal*, 34 Conn. 434, 91 Am. Dec. 735; *Garvin* v. *Williams*, 44 Mo. 465; *Broder* v. *Conklin*, 121 Cal. 282, 286, 287, 53 Pac. 699; *White* v. *Warren*, 120 Cal. 322-324, 49 Pac. 129, 52 Pac. 723; *Odell* v. *Moss*, 130 Cal. 352, 62 Pac. 555; *Stiles* v. *Kain*, 134 Cal. 172, 66 Pac. 231; 2 Pomeroy's Equity Jurisprudence, 2d ed., sec. 956; 1 Story's Equity Jurisprudence, sec. 308; Jones on Evidence, sec. 188.)

Otis, Gregg & Surr, for Respondents.

The case was properly withdrawn from the jury. The will must be pronounced valid as respects mental capacity, notwithstanding the age of the testator, or his feebleness of condition, or the injudiciousness of its terms. (Underhill on Wills, secs. 89, 93; Page on Wills, sec. 94; 25 Am. & Eng. Ency. of Law, 1st ed., 971, 983; *In re McDevitt*, 95 Cal. 33, 30 Pac. 101; *In re Carriger*, 104 Cal. 84, 37 Pac. 785; *In re Wilson*, 117 Cal. 270, 49 Pac. 172, 711; *Estate of Kendrick*, 130 Cal. 364, 62 Pac. 605; *In re Carver's Will*, 3 Misc. Rep. 567, 23 N. Y. Supp. 757; *Bennett* v. *Bennett*, 50 N. J. Eq. 439, 26 Atl. 575; *In re Pitt's Estate*, (Wis.) 55 N. W. 151; *Miller* v. *Oestrich*, 157 Pa. St. 264, 27 Atl. 746, and cases cited; *Beyer* v. *Le Fevre*, 186 U. S. 114, 22 Sup. Ct. 765; *Ivison* v. *Ivison*, 80 App. Div. 599, 80 N. Y. Sup. 1011.) The evidence does not sustain undue influence, notwithstanding the will was drawn by an attorney who was a beneficiary. (Underhill on Wills, secs. 137, 145; *In re Suydam's Will*, 84 Hun, 514, 32 N. Y. Supp. 449; *Montague* v. *Allan's Executors*, 78 Va. 592, 49 Am. Rep. 387; *In re Smith's Will*, 95 N. Y. 523; *Bancroft* v. *Otis*, 91 Ala. 279, 24 Am. St. Rep. 904, 8 South. 287, 288; *Loder* v. *Whelpley*, 111 N. Y. 239, 18 N. E. 877; *Post* v. *Mason*, 91 N. Y. 539, 43 Am. Rep. 694, 695; *Cheatham* v. *Hatcher*, 30 Gratt. 56, 32 Am. Rep. 659; *Stull* v. *Stull*, (Neb.) 96 N. W. 199; *Bennett* v. *Bennett*, 50 N. J. Eq. 439, 26 Atl. 576; *In re Logan's Estate*, 195 Pa. St. 282, 45 Atl. 730; *Haughlan* v. *Conlan*, 86 App. Div. 290, 83 N. Y.

Supp. 831; *Estate of Nelson,* 132 Cal. 193, 64 Pac. 294; *Estate of Calef,* 139 Cal. 676, 73 Pac. 539.)

VAN DYKE, J.—This is an appeal from an order denying a new trial.

The proceeding is an application by the petitioner to revoke the probate of the last will and testament of David Morey, deceased. It is alleged in the petition that David Morey died in the county of San Diego, state of California, on June 21, 1902, being at the time a resident of the county of San Bernardino, in said state; that such proceedings were had in said superior court of San Bernardino County, that a document dated the thirty-first day of March, 1902, was admitted to probate as the last will and testament of David Morey by said court on the twelfth day of July, 1902, and that K. C. Wells and Charles E. Truesdell, who were named in said document as executors, were appointed as such by said court, and immediately entered upon their duties.

That petitioners William Morey, Israel Morey, and Abraham Morey are brothers of said decedent; that petitioner Catharine Wollam is a sister of said decedent; that petitioner M. D. Felkner is the only child and heir at law of Esther Felkner, deceased, the sister of said decedent; that petitioners John S. Rose, Lilian F. Jaqua, Anna V. Hoot, and Mary R. Hoover are the only surviving children, and are heirs at law of Elizabeth Rose, deceased, sister of said decedent; and that Louisa Rose is the only surviving child and heir at law of Alvin Rose, deceased, a son of Elizabeth Rose, deceased; and that all said petitioners are heirs at law of said decedent, and are interested in said estate. It is further alleged that said document is not the last will and testament of said decedent, and that said decedent died intestate, and that at the time said document purports to have been executed by said decedent he was not of sound mind; that the document, if executed at all by decedent, was procured to be executed by the undue influence of Charles E. Truesdell; that said Truesdell was an attorney and counselor at law, and was at the time said document purports to have been executed, and for a long time previous thereto had been, the attorney and counselor of said decedent, and had sustained toward said decedent relations of trust and confidence; that said document

was drawn by said Truesdell as attorney of said decedent in the course of his professional employment, and, if executed, was so executed in the law office of said Truesdell, and under his supervision and at his instance and request; that said Truesdell is named in said document as one of the executors thereof, and as one of the residuary legatees; that the appointment of said Truesdell as executor, and his constitution as one of the residuary legatees, were procured through the exercise by said Truesdell over said deceased of undue influence arising from the relationship of trust and confidence with said decedent as his attorney and counselor. It is also alleged that said document, if executed by decedent, was procured to be executed by the menace, duress, and undue influence of K. C. Wells, who at the time was the president and chief executive officer of the Union Bank of Redlands, which bank at that time, and for a long time previous thereto, had been the holder and owner of a mortgage on all the property of said decedent, to secure his payment of a large sum of money, and the said Wells was and has been for a long time the agent of said decedent and managing his business and monetary affairs, and had governed and controlled all his actions in business and monetary matters; that said Wells was present at the time said document was drawn and at the time it purports to have been executed, and suggested and dictated its various provisions, and procured the pretended execution thereof by the exercise of undue influence over decedent; that said Wells is named in said document as one of the executors and one of the residuary legatees of said decedent, and is claiming a portion of the estate thereunder, and that his appointment as executor and constitution as one of the residuary legatees were procured through the exercise by said Wells over decedent of menace, duress, and undue influence, arising from the relationship of trust and confidence with said decedent.

It is further alleged that said decedent was deeply attached to his wife, Sarah J. Morey, in her lifetime, and allowed her to manage and control all of the property belonging to him or them, and said Sarah J. Morey was allowed by said decedent to take the title to all real estate belonging to them, or either of them, in her own name; that said Sarah J. Morey was a person of strong will power, and that her control over

said decedent in her lifetime was absolute, and extended to control of his property and affairs; that said decedent was in the habit of following her directions in regard to the disposition of his property and affairs, and depended upon her advice and directions in that behalf; that said Sarah J. Morey died on the seventh day of August, 1901, leaving said David Morey surviving her; that by her last will and testament she bequeathed and devised all of her property of every kind and character to said David Morey; that a few days before her death—to wit, on the fourth day of August, 1901—said Sarah J. Morey, being then aware of her approaching death, caused to be prepared written directions to said David Morey and to certain of her friends as to what she wished them to do with said property, and signed her name thereto, or caused it to be signed by some one in her presence; that by said paper, after requesting that various articles of personal property be given to certain of her friends, she directed that the sum of two thousand dollars be given to one Mrs. Painter, two thousand dollars to one Morey Cole, and four thousand dollars to one Ada Hoskins, and that any money not so disposed of or used by said David Morey should be given to some children's hospital for the purpose of endowing one or more beds to be known as the Sarah Morey Endowment, and, if there was money sufficient to endow more than one bed, one Mrs. Moore, with the help of K. C. Wells, should decide how it should be endowed, and that said K. C. Wells should decide where it should be endowed.

That it was the earnest desire and intention of said David Morey, so far as he was mentally capable of forming any intention, to carry out the wishes of his wife relating to the disposition of said property, as expressed in said paper; that said K. C. Wells obtained possession of said paper, and by the use of undue influence over said decedent, he, with said Truesdell, procured the execution by said decedent of said document purporting to be his last will and testament, wherein, instead of carrying out the wishes and directions of said Sarah J. Morey, he was induced to attempt to bequeath to Ada Hoskins the sum of one thousand dollars only, and to attempt to bequeath the sum of three thousand dollars to the First Congregational Church of Redlands, a religious organization not authorized by law to take by will, and to leave

only the sum of one thousand dollars for the purpose of endowing a bed in some hospital to be selected by them, and to make said Wells and Truesdell his residuary legatees, they well knowing that the attempted bequests to said church and hospital were and are void, and that if said document were allowed to stand as the last will and testament of said decedent said bequests would revert to them as residuary legatees. It is also alleged that the bequest to Wells and Truesdell was intended to be received by them in trust for charitable uses, and that they are now claiming the said bequest as their own right, with the intention of appropriating the same to their own use.

The foregoing are the material allegations of the petition for the revocation of the proof of said will.

By the answer filed on the part of the respondents the material allegations of the contestants were put in issue. This is the second trial of the case. On the first trial a verdict was rendered in favor of the contestants, which was set aside and a new trial granted. On the case coming on again for trial on April 12, 1904, a jury was demanded on the part of contestants and was impaneled and sworn to try the cause. After the testimony had been offered by the respective parties, the contestants moved the court to submit certain special issues to the jury. Respondents thereupon objected to the submission of said issues or any issues, on the ground that there was not sufficient evidence to warrant the court, or which would authorize a jury, in finding a verdict on any special issues in favor of the contestants. The court, after having heard argument on the motion and objections thereto, sustained the objections, and declined to submit any issues to the jury, on the ground that no evidence authorizing the submission of said issue had been offered or introduced upon the trial. Thereupon the court prepared and signed certain findings of fact ordering and adjudging that the order of the court made and entered the twelfth day of July, 1902, admitting to probate the document dated the thirty-first day of March, 1902, as the last will and testament of David Morey, deceased, stand and is affirmed as such. Thereafter contestants moved the court upon a statement of the case for a new trial, which was denied, and from the order denying the motion for a new trial this appeal is taken, as heretofore stated.

In the statement on motion for new trial quite a number of exceptions are noted to the rulings of the court during the progress of the trial and specifications of the insufficiency of the evidence to justify the findings of the court.

The main points, however, presented and urged on the part of contestants and appellants on the appeal are practically· reduced to two—to wit, that the decedent at the time of executing the will in question was of unsound mind, and that the will was procured and executed under the undue influence of the executors, Truesdell and Wells.

In this connection it is further contended that in refusing to submit the special issues to the jury and in discharging the .jury without a verdict the court practically granted a nonsuit, which it was not authorized to do in this case, for the reason, as contended, that the evidence produced on behalf of the plaintiffs established a case sufficient to have the issue submitted to a jury.

Conceding that the action of the court in refusing to submit the evidence to the jury was the equivalent of a nonsuit, still, if the evidence on behalf of the plaintiffs would not have justified a verdict in their favor on the issues presented, the court was justified in the action taken, for under such circumstances it would have been the duty of the court to set aside the verdict as was done on the first trial. An action may be dismissed or a judgment of nonsuit entered upon motion of the defendant when upon the trial the plaintiff fails to prove a sufficient case for the jury. (Code Civ. Proc., sec. 581.) Upon an examination of the evidence we are satisfied that it fails to prove a sufficient case to justify a verdict or findings in favor of the contestants. It will be seen that in the petition of the contestants it is stated that David Morey desired to follow out his wife's wishes as expressed in the memorandum left by her just prior to her death, which memorandum is attached to the petition as an exhibit, but this memorandum or statement, if it had been followed literally by the decedent in his will, would not have benefited the contestants. It shows that Mrs. Morey never desired that any of the eastern relatives who constitute the contestants should ever receive a particle of the estate. A few days prior to the execution of the so-called memorandum—to wit, August 1st—Mrs. Morey had executed the will in which she be-

queathed and devised all her property, real and personal, to her husband as and for his absolute estate, and appointed him the executor of the said will, which said will was filed for probate August 10, 1901. The will of Mr. Morey under contest departs in some respects from the memorandum left by Mrs. Morey, but in her memorandum she says: "I want my husband, Mr. Morey, first in all respects and plans, pleased, satisfied and always comfortably restful." But it would not benefit the contestants if the deceased whose will is being contested had literally and in every respect complied with the memorandum; and the evidence shows that subsequent to the death of his wife circumstances occurred which, to Mr. Morey at least, seemed to justify him in departing somewhat from the memorandum left by her, and the fact that he did so depart from the suggestions contained in her memorandum would seem to indicate that he exercised his own judgment in making the will under contest. The witnesses on behalf of the contestants in reference to the question of unsoundness of mind and undue influence are practically reduced to three in number, Miss Gertrude Hayes and Mr. and Mrs. Moore. The main reason assigned by these witnesses in their testimony that he was of unsound mind is, that he was a great sufferer from eczema, and also at one time he had an abscess in one of his ears; but it is not an unusual thing—in fact, it is rather the opposite—that one may be a great sufferer from some physical ailment and still be of sound mind and in possession of his mental faculties and able to transact business. Miss Gertrude Hayes, although of the opinion that he was of unsound mind, was at the same time negotiating with the deceased Morey for a large and valuable piece of property. It is not fair to suppose that one would be transacting business with a person of unsound mind or incapable of transacting the business in question. Mr. Moore thinks that his unsoundness of mind was the result of his ill-health. His testimony shows that he had some feeling against the executors, Wells and Truesdell. He said, however, he had no feeling against Truesdell, but he was very much hurt that Mr. Wells should be guilty of what he calls a breach of trust,— that is, in not carrying out the suggestions of Mrs. Morey,— but he says: "I endeavored to induce him to make a will, and I thought that that was the right thing to do to have the

property go as it ought to go." Further: "I also knew that Mrs. Moore was mentioned conditionally as one of the persons whom Mrs. Morey wanted to be benefited by the property, and knowing that fact I urged Mr. Morey to make this will which would make Mrs. Moore a beneficiary in accordance with that memorandum." The will was made in such a way that Mrs. Moore was not made a beneficiary under it. The testimony of Mrs. Moore is somewhat similar to that of her husband. It was to the effect that he was not of sound mind, yet she assisted him in disposing of a great portion of the property that had been left in the home by Mrs. Morey in accordance with the requests of Mrs. Morey, and it can hardly be presumed that at that time she supposed she was dealing with a man of unsound mind or one incapable of managing his property. Decedent was, it appears, deeply attached to his wife, and allowed her to take all the property belonging to them in her name and manage and control the same up to the time of her death, but by her last will, as already shown, it was all transferred to him. They had no children. A few days after the death of Mrs. Morey, which occurred August 7, 1901, Mr. Morey accompanied Mr. Wells, one of the respondents, to the summer house of the latter at Terminal Island, near San Pedro, in Los Angeles County, where he was expected to remain a week or two if he so desired. There on the eleventh day of August, 1901, he caused to be prepared a will which was executed and attested by Mr. and Mrs. Holmes. Morey put this will in his pocket and carried it away with him the next day when he left Terminal Island. This will and the one in contest were the same in form and effect, with the exception that the first will left four thousand dollars to Miss Ada Hoskins and one thousand dollars to the Congregational church of Redlands and nothing to Mrs. Creighton. The second will, the one under consideration, cut down Miss Hoskins's bequest to one thousand dollars and added two thousand dollars to the bequest to the Congregational church and left one thousand dollars to Mrs. Margaret Creighton. The aggregate amount of his specific bequests remaining the same in both wills, and in each Wells and Truesdell were named as executors and residuary legatees. The parties, however, affected by the changes in the second will are not among the contestants. About the middle of June following the execu-

tion of the last will Morey went to San Diego, where on the 21st of that month he committed suicide, caused, as he states, by his physical sufferings from eczema. He left a note, addressed to Mr. Wells, with an envelope containing the keys, and says in the note: ''You will find a letter addressed to you and Truesdell in a drawer of the secretary of my room at Dr. Creighton's. It will tell you what to do with my effects in the room. Please carry out my wish in my last will. Destroy the first will. I leave many dear friends whom I love and respect. We hope to meet on the other side of the dark river. Good-by to all.'' From the time of the execution of the will he had it in his possession and had the opportunity of destroying it if it had been obtained from him by any undue influence, or if the same did not fully and fairly contain his last wish and will. Yet here we have, some three months after the execution of the last will, in the foregoing letter what would seem to be a most solemn ratification of the same. His estate was appraised at the sum of a little over twenty-one thousand dollars, and the specific bequests aggregate some ten thousand dollars. Add to this the claims against the estate aggregating about five thousand dollars, and it would leave only about five thousand dollars to be divided between the residuary legatees. These legatees, as shown by the evidence, were the old esteemed friends of both Mr. and Mrs. Morey. There is nothing in the evidence tending to show that it was the wish of Morey, the deceased, that any portion of the small estate should go to his eastern relatives, none of whom he had seen for over forty years, excepting one brother who some years ago visited him in California.

The right to dispose of property in contemplation of death is as old as the right to acquire and possess property, and the laws of all civilized countries recognize and protect this right. It seems, however, to be the impression among many that if the property is not disposed of as the surviving relatives, near or remote, may think it should have been disposed of, the decedent must have been incompetent to transact business or was acting at the time under undue influence of some kind. But as said in *In re Carriger*, 104 Cal. 84, [37 Pac. 786]: ''To set aside a will . . . is a serious matter; and a verdict having that effect should be closely scrutinized by the trial judge. The upsetting of wills is a growing evil.'' It is

also said in *In re McDevitt*, 95 Cal. 33, [30 Pac. 106]: "But the right to dispose of one's property by will is most solemnly assured by law and is a most valuable incident to ownership, and does not depend upon its judicious use. The beneficiaries of a will are as much entitled to protection as any other property-owners; and courts abdicate their functions when they permit the prejudices of a jury to set aside a will merely upon suspicion, or because it does not conform to their ideas of what was just or proper." And in *In re Wilson*, 117 Cal. 270, [49 Pac. 174], it is said: "The history of this species of litigation shows that quite a number of people have come to think that the right to dispose of property by will has but little significance, and may be legally disregarded whenever the testator has not disposed of his property in the manner which suits the views of the jury."

If the issues here had been submitted to the jury under the evidence in the case, and a verdict or special finding should have been rendered in favor of the contestants, it would have been the duty of the court to set the same aside. That being so, the court was justified in refusing to submit the case to a jury. As said by this court in the *Estate of Tibbetts*, 137 Cal. 128, [69 Pac. 980]: "Where, however, there is really no substantial evidence to support a verdict, or the jury were evidently actuated by motives which they had no right to consider,—as is so frequently the case in contests of wills,— there this court will hold that, as a matter of law, the verdict is unwarranted, even though there be some slight pretense of evidence to support it."

It may be conceded that in withdrawing the case from the jury the court practically granted a nonsuit, as claimed by the contestants, and that the court was not justified thereafter in making special findings, but this irregularity or error is harmless and cannot prejudice the appellant. The case is before us in substantially the same aspect as if, at the close of the evidence on both sides, the court had directed the jury to bring in a verdict against the contestants. There is, however, no material difference between the rule governing this court in the consideration of the sufficiency of the evidence where the court below has directed a verdict, from that prevailing where a nonsuit is granted on motion made after the evidence for both parties has been given. In *Lacey v. Porter,*

103 Cal. 605, [37 Pac. 637], which is the only California case
on the subject, the court says: ''To justify the court in direct-
ing a verdict it is not necessary that there should be no con-
flict in the evidence; but where the evidence is such that it is
clearly insufficient to support a verdict in favor of the party
against whom the direction is given, the instruction is proper,
unless the circumstances indicate that upon another trial the
evidence may be materially different, in which case the facts
should be submitted to the jury in order that a new trial may
be had. But in either case the decision of the court below will
be sustained, unless the appellate court can clearly see that its
conclusion is wrong upon the facts.'' There are many deci-
sions, referring, for the most part, to some particular instruc-
tion which assumes the existence of some fact in issue, where
it is said that it is error to do so if there is conflicting evi-
dence as to the fact assumed. But with regard to the grant-
ing of a motion for nonsuit made at the close of the evidence
for plaintiff and defendant, the rule seems to be well estab-
lished that the trial court has discretion, and that it is not
error to grant the motion where, upon all the evidence, it is
clear that if a jury should bring in a verdict against the
defendant it would be the duty of the court to set it aside
and order a new trial. (*Geary* v. *Simmons,* 30 Cal. 224; *Van-
derford* v. *Foster,* 65 Cal. 49, [2 Pac. 736]; *Fagundes* v. *Cen-
tral Pacific R. R. Co.,* 79 Cal. 100, [21 Pac. 437]; *Fox* v.
*Southern Pacific Co.,* 95 Cal. 234, [30 Pac. 384]; *Toulouse*
v. *Pare,* 103 Cal. 251, [37 Pac. 146].) The above rule, of
course, does not mean that in every case where the trial court
might properly grant a new trial for insufficiency of evidence
for plaintiff it should grant a motion for nonsuit, if made
after both parties rest their case, but only that it should do so
in very clear cases, which is practically the rule which con-
trols in directing a verdict. Courts are not instituted to
enable parties who have neither a wrong to redress nor a
right to enforce to persist in a groundless suit, resting on the
chances which arise from prejudice which sometimes in-
fluences juries. Where, after a case is all in, the court can
see that no other evidence favorable to one of the parties is
likely to be discovered or produced, and that upon all the
evidence given a verdict in his favor would be altogether
unjustifiable, and if rendered must be set aside on motion,

and that the continuance of the litigation will probably produce no other result than injury to the party who is in the right, it is its duty to end the case by directing a proper verdict. Granting that the course pursued in this case was irregular, it does not follow that it is fatal to the judgment, even on appeal. The code expressly declares that no judgment shall be reversed for error unless a different result would have been probable if the error had not occurred. (Code Civ. Proc., sec. 475.) In the case at bar it does not appear that a different result would have been probable. There was no indication that any additional evidence at all material could ever be produced in favor of the contestants.

It is claimed that there was a substantial conflict in the evidence regarding the issue of undue influence. There was evidence that Truesdell, one of the residuary legatees, who would receive a part of the estate by the provision in his favor, drew the will, and had been for a long time before the attorney for the testator, and that the testator when he made the will was old, feeble, and suffering intensely from disease,— circumstances which, under the rule given in 1 Underhill on Wills, 209; Civ. Code, sec. 2235; *Estate of Wickes,* 139 Cal. 202, [72 Pac. 902]; and *Estate of McDevitt,* 95 Cal. 33, [30 Pac. 101], would, if taken alone, raise the technical implication or presumption that the will was procured by the undue influence of Truesdell, or would at least require the proponents to show what did actually occur at the time of its execution and prior thereto, so that the presence or absence of undue influence by him could be determined. This presumption, it is claimed, is evidence, and creates a conflict, upon which it was necessary to allow the jury to decide. But all the other circumstances surrounding and leading up to the execution of the will were fully disclosed by the evidence, without conflict, and they showed that there was no undue influence. In addition to this, there is the positive evidence of the persons present, and of others who could reasonably be supposed to have any knowledge of the case, to the effect that such influence was not exerted; and the expressed affirmance of the will by the testator himself shortly before his death, as already shown, at a time when the persons charged with the exercise of the undue influence did not have an opportunity to exercise it, completely remove the imputation of undue

influence and show that the provisions of the will in favor of the residuary legatees were conceived by the testator himself without influence or suggestion from others. This is so satisfactorily proven that a verdict for the contestants, if it had been rendered, should have been unhesitatingly set aside by the court.

There is indeed no real conflict in the evidence. The facts on which the asserted presumption of undue influence rests are not denied or contradicted, but are practically admitted. The other evidence given to refute the presumption consisted of additional facts which also were not seriously disputed or contradicted, and they furnished the explanation necessary to destroy the implication of undue influence. There was therefore nothing upon which a verdict setting aside the will could justly be supported, and the method of proceeding, though irregular, did not cause any injustice, but ended in the judgment that should have been given. The will had previously, as shown, been admitted to probate, and unless set aside by successful contest would stand as the last will of the decedent. The appellants in this case upon their own evidence failed to sustain the contest, and the result to them is the same whether a nonsuit was granted or whether special findings were made by the court adverse to their contention.

We see no errors in the rulings of the court during the progress of the trial which would justify reversing the order of the court denying a new trial. The contestants now have had two trials, and it is fair to presume they have produced all the testimony they are capable of producing in support of their contention, and a new trial therefore would be entirely useless, even if there were sufficient grounds shown for granting the same.

The order appealed from is affirmed.

Shaw, J., and Angellotti, J., concurred.