[Civ. No. 6340. Second Appellate District, Division One.—January 14, 1929.]

In the Matter of the Estate of CAROLINE E. BLEIL, Deceased. MARY E. FLEISHELL et al., Appellants, v. GEORGE E. BELL et al., Respondents.

F. L. Richardson for Appellants.

E. Swift Torrance, E. A. Luce and Sloane & Sloane for Respondents.

HOUSER, J.—This appeal is from a judgment rendered in pursuance of an order of nonsuit in a will contest.

At the time the will was drawn the testatrix was eighty-two years of age. She left no surviving husband, children, father, mother, brother, or sister. Her property was devised and bequeathed unto her "good friend George E. Bell . . . for the term of his natural life, and at his death in fee simple to my (her) friend W. Jefferson Davis. . . . " The contestants of the will are either surviving nieces or nephews of the testatrix. Although other grounds were alleged in the contest, the ground upon which reliance was finally placed by the contestants was that of undue influence.

The only point made by appellants herein is that "the court erred in sustaining the proponents' motion for nonsuit and taking the case from the jury."

On a motion for nonsuit, it is a well-established rule that all contradictions, conflicts, and inconsistencies which may appear in the evidence adduced by the plaintiff shall be disregarded, to the end that the evidence as a whole may be viewed in its most favorable light as it affects the theory of the complaint. For the sole purpose of ruling on the motion, without any question being permissible as to the falsity of such facts, for the moment they are assumed to be true and necessarily must be so accepted by the trial court. With so much in mind, in brief it may be stated that from the evidence presented by the contestants herein, it was made to appear that Davis, to whom the remainder of the estate was bequeathed and devised, was, and for a considerable length of time preceding the date of the execution of the will had been, the attorney for the testatrix; that at that time she was indebted to Davis for legal services rendered by him in her behalf in the sum of $250; that the testatrix was a frequent caller at the law office of Davis, and that he also was more than an occasional visitor at the home of the testatrix; that both at the home of the testatrix

and in public places as well Davis bestowed unusual attentions upon the testatrix; that on several occasions he presented her with flowers and potted plants; that together they went to dinner or automobile riding, from which they sometimes returned to the home of the testatrix at a late hour, when the testatrix appeared to be under the influence of intoxicating liquor.

From the testimony of one of the witnesses introduced by contestants, it appeared that on the day before the will was executed the testatrix went to Davis' law office and there in the presence of such witness stated to Davis that she wished to change a will theretofore executed by her, so that in case of the death of Mr. Bell (who was the beneficiary both in the will which she desired to have changed and in the will in question) neither his relatives nor her relatives would receive any portion of her estate; but that "she desired to substitute Mr. Davis as a beneficiary under her will in place of any of Mr. Bell's relatives. That Mr. Davis langhed, . . . threw up his hands and said, 'You aren't talking to me, Mrs. Bleil; of course, you can make your will any way you want, but under the circumstances I could not draw it for you, or have anything to do with it; you will have to find another attorney to do it for you.' " Accordingly, the testatrix procured the services of a Mr. Butler, an attorney who theretofore had "handled a case" for her. The next day, in the absence of Mr. Davis therefrom, the testatrix went to his office, at which time she made the statement to his secretary "that she stopped at Mr. Butler's office, but that he was out; that he was drawing up a new will for her, and later she asked her (the secretary) to telephone Mr. Butler to see if her will was ready for her to sign; that she had him draw it up the day before, and it was ready for her that day, . . . She (the secretary) telephoned Mr. Butler at Mrs. Bleil's request; he stated the will was ready, and asked if Mrs. Bleil would come down and execute it, to which Mrs. Bleil replied that she was in a hurry, and said he could bring it to her quicker, and asked that he bring it to her at Davis' office. Mr. Butler brought the will up to Davis' office at Mrs. Bleil's request, and she signed it and declared it to be her will, in the presence of Mr. Butler and herself in Davis' office; there being no other person present,

and requested that Mr. Butler and herself sign as witnesses, which they did.''

Mr. Davis, called as a witness by contestants, corroborated the fact that when the testatrix asked him to draw the will by which he would be made a beneficiary, he declined to do so, but told her that ''she would have to get another attorney. That he never advised with Mrs. Bleil about the making of her will in 1926, and made no attempt of any kind to suggest any of the terms of her will; that he was not present when the same was executed and had only casual knowledge of its contents until long after the same was executed; that Charles E. Butler, who drew the will, was an attorney with offices in the same building, but that with no professional relationship then existing between them.''

The question of law presented to this court is whether from the foregoing facts it was error on the part of the trial judge to refuse to submit the issue of undue influence to the jury for its determination.

A consideration of the evidence hereinbefore outlined discloses the situation that, aside from the presumption arising from the confidential relation sustained by the attorney to his client generally, no positive fact was presented from which the conclusion could be reached that undue influence was exerted to procure the execution of the will in question. Nor was the evidence such that an inference rightfully could be deduced that the normal mind of the testatrix had been subjugated to that of the attorney. At most, nothing more than a conjecture that such was the case could properly be indulged. The presumption of undue influence which attached to the attorney solely because he was the attorney for the testatrix was not positive in character. In order that the presumption become absolute, evidence of activity, persuasion, or instigation on the part of the attorney, directed toward the execution of the will in his favor, is an indispensable prerequisite. Unless some such act of inducement be discernible from the evidence, the foundational presumption becomes negligible in importance as a factor in determining the issue of undue influence. ■ In other words, the relationship of attorney and client when appearing respectively as between the beneficiary and the testatrix, although carrying a presumption of confidence and trust from which would naturally flow a simple influence on the

part of the attorney toward the client to follow a specified suggested action, nevertheless (in the absence of either direct or circumstantial evidence of some act by the attorney from which an inference, at least, might be legally deduced that pressure was brought to bear directly upon the testamentary act, to the end that the free agency of the testatrix was thereby destroyed), such presumption, as against evidence of nonactivity or nonparticipation by the attorney either in suggesting, counseling, or advising with reference to the preparation or the execution of the will, is not sufficient in itself to sustain a charge of undue influence. (*Estate of Higgins,* 156 Cal. 257 [105 Pac. 6]; *Estate of Lavinburg,* 161 Cal. 536 [119 Pac. 915]; *Estate of Ricks,* 160 Cal. 450 [117 Pac. 532]; *Estate of McDevitt,* 95 Cal. 17 [30 Pac. 101]; *Estate of Morey,* 147 Cal. 495 [82 Pac. 57].)

In *Estate of Baird,* 176 Cal. 381, 384 [168 Pac. 561, 563], it is said that: "A 'presumption of undue influence' arises from proof of the existence of a confidential relation between the testator and such a beneficiary, 'coupled with activity on the part of the latter in the preparation of the will.' The confidential relation alone is not sufficient. There must be activity on the part of the beneficiary in the matter of the preparation of the will." (Citing authorities.)

The evidence in the instant case introduced by the contestants, far from showing any act on the part of the attorney from which it might be inferred that the mind of the testatrix had been subjugated and that her free agency in the matter of the preparation and the execution of her will had been destroyed, to the contrary, disclosed a state of facts, positive in character, which indicated with conclusiveness that in the preparation and the execution of the will the testatrix acted freely, voluntarily, and without pressure of any sort so far as the attorney was concerned.

In *Estate of Higgins,* 156 Cal. 257, 262 [104 Pac. 6, 8], where a situation somewhat similar to that here involved was under consideration, among other things, the court said: " . . . Giving to contestants the full force of the presumption of undue influence arising from the confidential relations between the testator and the proponent, coupled with activity on the part of the latter in the preparation of the will (*Estate of McDevitt,* 95 Cal. 17, 33 [30 Pac. 101]; *Coghill* v. *Kennedy,* 119 Ala. 641 [24 South. 459]), this pre-

sumption was fully met and overthrown by the uncontradicted evidence showing the actual circumstances surrounding the preparation and execution of the will. (*Estate of Morey*, 147 Cal. 495 [82 Pac. 57].) *It was shown that the testator, before executing his will, had consulted with an attorney, who visited him for that purpose.* At this interview no member of his family, except his wife, was present. . . . "

■ Although it is true that ordinarily in a case where by the will of a client his attorney has been made a beneficiary therein, on a contest of such will the burden is cast on the attorney to overcome the presumption of fraud and unfair dealing which the law attaches to an attorney in such a situation (*Estate of Witt*, 198 Cal. 407 [245 Pac. 197]), nevertheless, where on an issue of undue influence the evidence introduced by the contestant is such that, assuming that thereon a verdict should be rendered in favor of the contestant, the trial court would be bound to set it aside, no error is committed by the trial court in refusing to submit such issue to the jury; but in such circumstances an order of nonsuit is justified. (*Estate of Higgins, supra; Estate of Morey, supra.*)

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 4, 1929, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 14, 1929.