[Civ. No. 5161.  Second Appellate District, Division Two.—April 22, 1929.]

W. O. VAN WYKE, Appellant, v. A. S. BURROWS et al., Respondents.

Fred Mansur for Appellant.

Harry L. Person and George D. Rodgers for Respondents.

STEPHENS, J., *pro tem.*—Plaintiff, the appellant herein, entered into an agreement with A. S. and C. B. Burrows, both of whom are defendants and respondents herein,

whereby he was to endeavor to sell the latter's bank stock and was to receive ten dollars for each share sold. Plaintiff made certain efforts to secure a purchaser, and in a more or less indirect way these efforts interested parties who actually purchased the stock, whereupon he claimed the commission, which defendants refused to pay, claiming that they had no knowledge that the purchaser came to them through the efforts of plaintiff and that they sold the stock without making provision for the payment of any commission. This action for the commission resulted, and at the conclusion of plaintiff's case he offered to dismiss the action against certain defendants, whereupon the court stated: "I do not believe there is any case made against anyone." Counsel for defendants then replied: "I intended to make a motion for a nonsuit as soon as the plaintiff got through," to which the court responded: "The motion will be granted." Judgment of nonsuit was thereafter entered and plaintiff appeals on the ground that the motion should have been denied. on the evidence.

Respondents contend that the judgment should stand, urging that the evidence is insufficient to sustain a finding that appellant actually produced a purchaser ready, willing and able to buy the stock and who in fact did purchase it. We shall not examine the evidence upon this point, as we think the action of the court in ordering a judgment of nonsuit must be sustained independent thereof.

While appellant was on the witness-stand the following questions were asked and answers given: "Q. Did you hold a broker's license from the corporation commissioner of the state of California? A. I have never held but one license in the state of California, and that is a real estate broker's; I had a salesman's license first." Respondents claim that this testimony was a sufficient basis for the court's ruling on the motion for nonsuit, claiming, of course, that the contract for commission was void because the broker was not licensed under the Corporate Securities Act. (Stats. 1917, p. 673.) In answer to this appellant makes two statements as to the law, contending that either one is a sufficient reason why the testimony should have been entirely disregarded by the court. These statements are that "respondents cannot now for the first time raise the provisions of the Corporate Securities Act as a bar to recovery without having pleaded

it and raised it as an affirmative defense,'' and that ''appellant is not within the jurisdiction of the Corporate Securities Act.'' We shall examine these points in the inverse order of their statement.

Subdivision 9 of section 2 of the Corporate Securities Act as amended in 1923 (Stats. 1923, chap. 50, p. 89) reads as follows: ''The word 'broker,' as used in this act, includes every person or company, other than an agent, offering for sale, negotiating for the sale of, or otherwise dealing in any 'security' or 'securities' issued by others . . . or offering them for sale to the public.'' Section 5 of the same act as amended in 1923 (Stats. 1923, p. 90) reads as follows: ''No person or company shall act as an agent or broker until such person or company shall have first applied for and secured from the commission a certificate, then in effect, authorizing such person or company so to do . . . '' That appellant was acting in the capacity of broker is certain. He went to A. S. Burrows of his own volition and talked with him about selling the stock. He testified: ''And I asked him why didn't he sell his bank? Well, he turned to me and says, 'Why don't you sell it?' I told him I had lost touch with banks; had not dealt in any bank stock for a number of years, but I would keep it in mind.'' On a later occasion these same gentlemen met and appellant asked Mr. Burrows if he still desired to dispose of the control of the stock, and the reply was in the affirmative. Mr. Burrows then furnished appellant with a statement of the bank's condition. ''Q. [Propounded to appellant]: Then it was understood that if you did negotiate a purchase of the bank you were to receive ten dollars per share for it? A. Ten dollars per share on all stock that was actually transferred. . . . Q. Then he made the condition for the sale of the stock that all stockholders should have the same privilege of selling? A. Yes, it should be optional with them whether they should dispose of their stock or keep it, all or any part of it.''

■ Appellant argues that since this was to be one transaction in which the control of the bank was to be sold, the transaction does not come under the statute for the regulation of stock sales. We are unable to follow him therein. He also contends that the case of *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 Pac. 960], is controlling. Again,

we are unable to agree with him. That case was one where an owner of real estate promised to award a person not a licensed realtor if he would send someone to him with whom he could negotiate a sale of his property. The person did send a prospect to the owner, and after negotiating with him the latter sold him the property. It was held that the award had been earned and could be collected, since the person was not acting as an agent to negotiate sales of real property. The analogy would have been a reasonable one had the contract herein been to send Burrows someone with whom he could negotiate; but the agreement, as we have seen, went far beyond that and was no more nor less than a contract to pay commission for the sale of stock.

██ Appellant also contends that bank stock is issued against the assets of the bank and is exempt from the operation of the statute because it is provided therein that it applies to companies "excepting . . . all corporations organized under the laws of this state for the purpose of conducting the business of banking . . . when such corporations are issuing securities of their own issue against their own assets." It seems too obvious for argument that this means bank notes or other certificates of credit and not the corporate stock of the bank. It appears to us that the contract or agreement which we have here under consideration falls squarely within the terms of the Corporate Securities Act. This being true, does it follow that the agreement for the payment of a commission is void? We think it does so follow.

██ Laws requiring licenses are generally divided into two classes. Laws enacted for the raising of revenue fall under one class, and contracts made or performed without the license are, generally · speaking, valid. Laws for the protection of the public fall under the other class, and contracts in violation of the latter class are invalid if the license had not been procured when performance was had. The Real Estate License Law and the Corporate Securities Law come under the latter classification. (*Wood* v. *Krepps,* 168 Cal. 382 [L. R. A. 1915B, 851, 143 Pac. 691]; *Levinson* v. *Boas,* 150 Cal. 185 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825]; *Beebe* v. *Kistler,* 52 Cal. App. 494 [199 Pac. 537]; *Houston* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55]; *Radich* v. *Cernokus,* 65 Cal. App. 452 [224 Pac. 124].)

420

We conclude that appellant is within the jurisdiction of the act.

■ We shall next consider appellant's second statement, only we shall phrase it differently: In the consideration of. this appeal have we· the right to consider the fact that appellant had no broker's license? It is true the amended complaint does not contain an allegation that plaintiff had a broker's license while attempting to sell the bank stock. We note too that the defendants demurred to the two counts of the amended complaint on the ground that in neither were facts alleged which were sufficient to state a cause of action, and that this demurrer was overruled. Upon the opening of the case defendants objected to the taking of any evidence for the reason stated in the demurrer, and the court reserved ruling. Since no ruling was ever made and the evidence received under the reservation remained in the case, it will be taken that the court intended the objection to be considered as overruled.

There are cases holding that there can be no presumption that a person has committed a crime or misdemeanor, and for that reason where the complaint fails to allege compliance with a statute providing a penalty, as the one we here have under consideration, there is no presumption that a license had not been obtained. (*Harris* v. *Bucher*, 25 Cal. App. 380 [143 Pac. 796], and cases therein cited.) The answer also is silent upon the question of license, and since the rules of pleading in this state require that affirmative defenses shall be set up in the answer (*Greiss* v. *State Investment etc. Co.*, 98 Cal. 241 [33 Pac. 195]), we must conclude that the pleadings alone do not present any issue upon the subject of a broker's license. Notwithstanding this situation as to the pleadings, appellant was asked directly by counsel for respondents whether or not he had such a license, and without objection thereto he responded in the negative. Here we find the moving party in a lawsuit raising no objection to the opposite party's eliciting the information that the very basis of his action was in direct contravention of a penal statute which was enacted for the protection of the people of the state. It seems to us that the power of the trial judge would be weak indeed if he could not immediately say that no recovery could be had under such circumstances and that therefore it would be purposeless to proceed

with the case, notwithstanding the fact that this specific ground was not mentioned in the motion for nonsuit. The point is well covered in *Estate of Higgins,* 156 Cal. 257, where at page 260 [104 Pac. 6], the following is found:

"Great stress is laid by the appellants upon the point that the court erred in refusing to submit to the jury the issue of undue influence. The ruling was, in effect, equivalent to an order granting a nonsuit as to one of the causes of action. The cases in which a judgment of nonsuit may be entered are set forth in section 581 of the Code of Civil Procedure, and the court has authority to grant such judgment only in the cases specified by law. (*Hanna* v. *De Garmo,* 140 Cal. 172 [73 Pac. 830].) There is no provision in our statutes authorizing the court (except under circumstances not appearing here) to grant a nonsuit without any motion to that end by the defendant. It would seem, therefore, that the court below should not, in the absence of any request by the proponent, have taken the issue of undue influence from the jury. But, under the facts disclosed by the bill of exceptions, this error or irregularity was not such as to justify a reversal. The evidence on the issue of undue influence was so conclusive in favor of the proponent that the court would have been bound to set aside a verdict in favor of appellants. When this condition appears the court is 'justified in refusing to submit the case to a jury.' (*Estate of Morey,* 147 Cal. 495 [82 Pac. 57].) A plaintiff is ordinarily entitled to a motion specifying the grounds upon which a nonsuit is asked in order that he may, by amendment or further proof, have an opportunity to supply any defect suggested. Where such defect is one which might have been cured, if called to the attention of the plaintiff, it would obviously be unjust to permit a defendant to urge it for the first time in the appellate court. (*People* v. *Banvard,* 27 Cal. 474; *Miller* v. *Luco,* 80 Cal. 261 [22 Pac. 195] ; *Palmer & Rey* v. *Marysville etc. Co.,* 90 Cal. 168 [27 Pac. 21] ; *Durfee* v. *Seale,* 139 Cal. 603 [73 Pac. 435].) But this consideration has no application to a case where the evidence has been fully presented, and the plaintiff has totally failed to make out a case which would support findings in his favor. Where there is no reason to believe that any additional evidence in support of the complaint could be produced, it is difficult to see what substantial benefit

422

would be derived from a formal motion for nonsuit, based on the insufficiency of the evidence. Such is the situation here. The defect in contestants' case is incurable, and the court will not order a reversal for the mere purpose of having submitted to the jury an issue which could not be decided in favor of contestants. 'Granting,' as was said in *Estate of Morey, supra,* 'that the course pursued in this case was irregular, it does not follow that it is fatal to the judgment, even on appeal.' "

It cannot successfully be here contended that the license matter was not an issue in the case, for the parties by their actions consented to make it an issue, notwithstanding it was not covered by the pleadings. (*Illinois T. & S. Sav. Bank* v. *Pacific Ry. Co.,* 115 Cal. 285, 297 [47 Pac. 60].) The principle is clearly stated in *Ortega* v. *Cordero,* 88 Cal. 221, at page 226 [26 Pac. 80], where the court, in distinguishing cases, says: "The class of cases cited by counsel for respondent, such as *White* v. *San Rafael etc. R. R. Co.,* 50 Cal. 417, *Tevis* v. *Hicks,* 41 Cal. 123, *Smith* v. *Penny,* 44 Cal. 161, and *Horton* v. *Dominguez,* 68 Cal. 642 [10 Pac. 186], has no proper application to the facts of this case. In that class of cases it appears of record that the parties have actually tried issues outside of the pleadings without objection, and by tacit consent, as if the issues had been made by the pleadings, and under such circumstances that if one party had objected the other might have supplied or cured the defect by amendment of his pleading, or otherwise mitigated the effect of the objection. The principle upon which these decisions rest is that of equitable estoppel; it being held that a party who acquiesces and participates in the trial of an issue without objection, as if it arose from the pleadings, when he might have objected on the ground that the issue was not made by the pleadings in the trial court, where the objection might have been met by amendment of the pleadings or otherwise, so that it would have operated less injuriously on the other party than if first made on appeal, has thereby waived the objection and misled the other party to understand that the issue was properly made, and therefore should not be heard to make it on appeal." In the instant case it is clear that an objection to the question regarding the broker's license would have put the defendant upon notice that his answer contained no

allegation that the plaintiff had no license and he could have amended to meet the situation.

We conclude that the contract for the sale of the bank stock was within the terms of the Corporate Securities Act, which act is not primarily an act for the raising of revenue, but is one primarily for the protection of the public; that during the time appellant was trying to sell the stock and at the time the stock was actually sold he had no license as required by the act; that the possession of a license became an issue in the case when, without objection, inquiry was made and answer given concerning the possession of a license; that notwithstanding the technical irregularity of the court's action in granting a nonsuit without a specification of the grounds of the motion, this court will not overrule such action and send the case back to the trial court when it is certain that no case could ever be made out for the plaintiff in the case. As appellant's case against all other defendants must fall if the contract with Messrs. Burrows falls, it follows that the action of the court in granting a nonsuit against all defendants should be sustained.

The judgment is affirmed.

Works, P. J., and Craig, J., concurred.