[Sac. No. 4553. In Bank.—September 23, 1932.]

In the Matter of the Estate of WILLIAM LANCES, Deceased. JOHN BROWN, Appellant, v. ABNER B. BAKER, Respondent.

C. A. Degnan, Vincent S. Brown and S. P. Galvin for Appellant.

H. H. Carleton, Andrew R. Schottky and Marshall Nuckolls for Respondent.

SHENK, J.—This is an appeal from an order admitting to probate the will of William Lances, deceased. The order was made following a contest of the will, before a jury. After the presentation of all of the evidence, the court directed the jury to answer special interrogatories favorably to the proponent of the will and dismissed the contest.

William Lances was an unmarried, illiterate but rather shrewd American Indian, and at the time of his death on April 1, 1930, was of the age of about fifty years. He had no children and lived on real property owned by him in Mariposa County westerly from the entrance to Yosemite Valley. A portion of his land was leased to the Associated Oil Company under a twenty-year contract at an annual rental of $1,000. He left an estate consisting of land, a few hundred dollars in cash and other personal property, all of which is said to be of the value of approximately

$25,000. After his death the respondent, Abner B. Baker, filed for probate a will purporting to be the will of the decedent, and in which Baker was named the sole beneficiary, and executor without bond. John Brown, claiming to be the uncle of the decedent, filed a contest of and objections to Baker's petition for the probate of the will on the grounds that the will was not executed in the manner and form required by law and that the execution of said will was the result of undue influence on the part of the proponent Baker. The question involved on the appeal is as to the correctness of the action of the trial court in so directing the jury.

In determining whether, in a proceeding to contest a will, the evidence produced by the contestant is sufficient to require the submission of the case to the jury, the same rules apply as in civil cases. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]; *Estate of Caspar,* 172 Cal. 147 [155 Pac. 631].)

It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." (*Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364]; *Perera* v. *Panama Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454]; *Estate of Sharon,* 179 Cal. 447 [177 Pac. 283]; *Estate of Gallo,* 61 Cal. App. 163, 175 [214 Pac. 496]; 24 Cal. Jur., pp. 912–918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Scofield Eng. Const. Co.,* 203 Cal. 224, 228 [263 Pac. 799].) A motion for a directed verdict "is in the nature of a demurrer to the evidence, and is governed

by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. . . . Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. . . . The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. The right of a court to direct a verdict is the same as the right of a court to grant a nonsuit. This can be done only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict was given. . . . If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such a trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict.'' (*Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108 [291 Pac. 184, 188].) ▆ In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.

Considering the evidence in the light of the rules of law to be applied, the record discloses the following facts in support of the contestant's cause:

The proponent, Abner B. Baker, is an attorney at law, but during all of the times involved in this controversy was not engaged in active practice. He has at all times, however, maintained his status as a member of The State Bar on the inactive list. He and the decedent owned and occupied neighboring properties and had been on friendly terms for some twenty years. The decedent was accustomed to consult with the proponent on business and legal mat-

ters from time to time. The proponent neither charged nor received from the decedent any attorney fees for legal advice, but the decedent assisted the proponent in performing work about the latter's place at various times and at "hog killing" time. A few days prior to December 19, 1929 (the date on which the purported will was executed), the proponent had occasion to go from his home to San Francisco to purchase and take delivery of an automobile. He requested the decedent to convey him in the decedent's car to Oakland for that purpose. This was done and on the journey together from Mariposa County to Oakland the two talked about the execution of a will by the decedent in which the proponent was to be the sole beneficiary, and it was agreed at the decedent's request that the will should be prepared by the proponent and that it should be signed by the decedent upon their return to their homes. The decedent returned in his own car some time in advance of the proponent, who arrived at his home about noon on December 19, 1929. After his noon-day meal the proponent obtained a pen, ink and paper and in the absence of the decedent, and in his own handwriting, indited the will in question on a table in his own home. At about 2 o'clock in the afternoon of that day the decedent appeared at the proponent's home and in the presence of the two subscribing witnesses signed the document which was complete in form and which named the proponent as sole beneficiary thereunder and as executor without bond. The subscribing witnesses signed as such in the presence of the decedent and in the presence of each other in all respects as required by law.

The foregoing evidence was uncontradicted. Under this state of the evidence there was no basis for the claim, alleged in the document of contest, that the will was not executed in the manner and form prescribed by law.

But we are of the opinion that the showing thus made was sufficient as against a motion for a nonsuit with reference to the other ground of contest. It was therefore also sufficient as against the motion for a directed verdict.

We are satisfied that, at the time the decedent consulted with and requested the proponent to prepare the will and thereafter at the time of the execution of the will under the proponent's direction, a confidential relation existed

between the two men. There can be no question but that at those times the decedent reposed special confidence in the proponent as one learned in the law. In the preparation and in directing the execution of the will the proponent displayed expert knowledge in the undertaking. In performing it the proponent, as an attorney at law, assumed a duty to the decedent which he was bound to discharge in good conscience and to the best of his ability whatever might be the terms of the will. In that behalf he was not a scrivener, as he contends, merely writing out the document at the dictation of the decedent. ■ It was not essential, we think, that the proponent should have received a cash or other specific consideration for his service in that respect in order to charge him with the relationship of trust and confidence in the transaction. He assumed the position and must be deemed bound by it.

■ There is next brought home to the proponent an uncontradicted showing that he unduly profited by the terms of the will. He was to receive the whole of the estate, representing a very substantial amount and to the prejudice of the heirs of the decedent. In this respect the case is distinguishable from *Estate of Morey*, 147 Cal. 495 [82 Pac. 57], and *Estate of Shay*, 196 Cal. 355 [237 Pac. 1079], where it was held that under the wills there in question it could not be said that the beneficiaries named in the wills would unduly profit thereunder.

In addition to the foregoing there was in the present case active participation on the part of the proponent in the execution of the will. He drew the will, prepared it in his own handwriting, and presented it to the decedent and the subscribing witnesses for execution. It has been said that the drawing of the will by a beneficiary thereunder who was at the time the attorney for the testator, coupled with the latter's age, suffering and disease, raised the implication or presumption that the will was procured by the undue influence of the attorney. (*Estate of Morey*, 147 Cal. 495, 508 [82 Pac. 57].) Here we have no sufficient showing that the decedent was mentally weak or incapable of performing the testamentary act, but we have the active participation on the part of the beneficiary in the execution of the will. Where one who unduly profits by a will sustains a confidential relationship to the testator and actively

participates in procuring the execution of the will, the burden is upon him to show that the will was not induced by his undue influence. (*Estate of Shay*, 196 Cal. 355, 363 [237 Pac. 1079]; *Estate of Gallo*, 61 Cal. App. 163 [214 Pac. 496].) This is but another way of saying that upon the concurrence of the elements just mentioned, a presumption of undue influence has arisen which must be overcome by the proponent. Whether it was overcome was a question, in the first instance, for the jury to determine.

The proponent was called as a witness by the contestant under section 2055 of the Code of Civil Procedure. When so called the contestant was entitled to rely on his evidence which was favorable to the contestant's claim and was not bound by any adverse testimony which the witness might give. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].) The proponent testified that several months before the will was signed the decedent expressed a desire to leave all of his property to the proponent's minor daughter and that he, the proponent, told the decedent "to forget it". He further testified that a day or so before the will was signed the decedent told him that he desired to leave all of his property to him; and after the will was signed and duly witnessed it was handed to the decedent with the suggestion by the proponent that he place the document in the hands of another lawyer for safe-keeping; that upon the death of the decedent the proponent visited the dwelling-house of the decedent and found the will in a suitcase in one of the rooms. The proponent's counsel stresses this evidence as showing that the decedent had the will in his possession for many months after it was signed and invokes the language used in *Estate of Morey*, 147 Cal. 495 [82 Pac. 57], to the effect that if any undue influence was exercised by the proponent in the execution of the will the decedent had it within his power during the intervening period to destroy the same. But the contestant was not bound by this adverse testimony. The credibility of the proponent was so impeached by witnesses for the contestant in rebuttal as to justify the jury in disregarding his testimony. The evidence on this vital point was such that it became a question of fact for the jury to determine whether the proponent was telling the truth. The testimony of the subscribing witnesses as to the circum-

stances occurring at the time the decedent signed the will and they subscribed as witnesses thereto was undoubtedly entitled to credit. One of them, an old acquaintance of both the proponent and the decedent, testified that in the morning of December 19, 1929, the decedent told him he was having Mr. Baker prepare some papers for him and he wanted the witness to look them over, tell him if they were all right, sign as a witness, and be at the proponent's home at about 2 o'clock in the afternoon; that at the appointed time the witnesses appeared as suggested; that the proponent then read over the will to the decedent, after which the decedent said "that it was all right, that is the way I want it"; that when the will was signed the decedent was of sound and disposing mind and that there was nothing in his appearance that was unusual or out of the ordinary. The other subscribing witness testified to the same effect. This testimony apparently had great weight with the trial court, but as above indicated the contestant was not bound by it and it could not be considered as determinative by the trial court in the face of substantial evidence in favor of the contestant's case. Under these circumstances we conclude that the issue of undue influence was one for the determination of the jury.

The order is reversed.

Curtis, J., Langdon, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.

Rehearing denied.